GRIMM, Appellant, v. GAMACHE, Respondent.

1. Objections to the admission of testimony should be specific, not general.

*Appeal from St. Louis Court of Common Pleas.*

*D. C. Woods* and *Goff*, for appellant.

*P. B. Garesché*, for respondent.

RYLAND, Judge, delivered the opinion of the court.

This was a suit to recover damages for the mal-performance of a building contract, and for damages sustained to the plaintiff's property by reason of the falling of the building. There was a trial below, and verdict and judgment for defendant; a motion for a new trial was made and overruled, and the plaintiff brings the case here by appeal.

The only points raised in this court by the appellant for reversing the judgment depend upon the rulings of the court below in admitting the record of a suit in the Circuit Court of St. Louis county between the same parties on a note given on account of the same contract, the foundation of this present suit; the rejecting parol evidence to contradict the record so given in evidence, and the refusing to give as well as the giving of instructions. There is nothing in the question about the admission of the record, and nothing in refusing to admit parol testimony to contradict it. When the record was offered in evidence the plaintiff objected, but he made no specific objection—pointed out no defect; nothing was brought to the mind of the court in order to pass upon the admissibility or incompetency of the evidence. This general objection has again and again been decided by this court as in fact amounting to no objection. The practice of making wholesale objections to the admission of a document as evidence, and then coming here for the purpose of pointing out specific causes of objection, specific defects, which, if mentioned below, could in most cases be obviated by the adverse party immediately, has met the decided disapprobation of this court. We will not regard such objections. We will not subject the inferior courts to the task of examining documents, of poring over long and sometimes nearly illegible instruments of writing and of records in order to ascertain whether or not they can be admitted in evidence. Let the objecting party point out the causes for which he objects, and then the court can at once see, and the adverse party have the opportunity of remedying or of doing away the objections.

Grimm v. Gamache.

As to the instructions given, we are of opinion that some of the instructions are calculated to mislead the jury, and were improper. Before we notice them separately, we must be permitted again to condemn the practice of giving so many and such useless instructions as from time to time appear in the records coming up to this court. Instructions are to assist the jury in forming their verdict according to the legal principles involved in the controversy—to instruct them how to arrive at a proper conclusion from the proof before them, according to the law governing the case. The instructions given by the court, of its own motion, are as follows: " 6. If the house in question was not built according to the contract between the parties, and the plaintiff knew of the defects and did not notify the defendant thereof, nor cause the same to be repaired, but continued to use and enjoy the same after having accepted it; and if the house afterwards fell down in consequence of said defects or the failure to repair the same, then the plaintiff is not entitled to recover for any damages he sustained from the falling of said house, if the said defects could have been repaired. 7. If the defendant contracted to build for plaintiff a brick house for the purposes alleged in the petition, then the defendant was bound to build for the plaintiff a good and substantial house. 8. If the jury believe from the evidence that the defendant contracted with the plaintiff to build for him a house as stated in the petition, and that said house was not built in a good workmanlike manner, and of good material, and that the plaintiff sustained damages therefrom, then the jury should find for the plaintiff. 9. If the jury believe that there was a special contract between the parties for the building of said house, and that after the same was built the plaintiff accepted the same, then the plaintiff must show to the satisfaction of the jury that the said house was not built according to contract, and unless the defects were not known to the plaintiff and not visible or open to observation, then the plaintiff must show the difference in the value of the house as it actually was at the time, and what its value would have been if it had been

built as contracted for, and that difference will be what the plaintiff is entitled to recover if he paid for said house according to the terms of the contract. 10. If the defendant agreed with plaintiff to build him a house fit and proper, and strong enough to answer the purpose specified in the petition, and the defendant failed to comply with his agreement, then the plaintiff is entitled to recover. 12. If the jury believe from the evidence that the contract was only to build a dwelling or boarding house, and not a dancing hall, and said house was built in a good workmanlike manner, and of good materials, and of sufficient strength for a boarding and dwelling house, then the jury should find for the defendant. 13. If the house in question was thrown down by a tornado, and not in consequence of any defect in workmanship or materials, then the jury should find for the defendant. 14. If the jury believe from the evidence that the defendant did not make the contract set out in the petition, or that if made by him he performed the same as agreed by him in a good workmanlike manner, and of good materials, or that said house did not fall down from any defect in workmanship or materials, then the plaintiff can not recover for any injury done or damages sustained from the falling of said house. 15. If the defendant made the contract set out in the petition, and after the house was built the plaintiff accepted the same as done in accordance with the contract, and paid therefor the contract price, and if said house was defective in workmanship or materials, and the plaintiff knew of said defects, or they were open to observation, then the measure of damages, if plaintiff paid the contract price as agreed, is the difference in value between what the house was really worth as it was built, and what it would have been worth if it had been built as contracted for. 16. If the contract alleged was made by the defendant and the defendant failed to perform the contract on his part, and when the plaintiff accepted the same he did not know of any defects in workmanship or materials, or they were not open to observation; and if, after the plaintiff accepted the same, the said house fell down in conse-

quence of defective workmanship or materials, then the measure of damages will be what the evidence shows the plaintiff actually sustained in consequence of said defects. 17. If the defects in workmanship or materials complained of did cause the fall, of the house and the plaintiff knew of said defects, or they were open to observation when the plaintiff accepted the house, and he did not repair the same or cause the same to be repaired, but used the house as it was built, then he can not in any event recover more than what it would have cost to repair or remedy said defects."·

The first instruction here given, being No. 6, has reference, not to the mal-performance of the contract to build, but to any damages sustained by the plaintiff by the falling of the house. The objection to the instruction is in reference to the phrase " after having accepted." This phrase would do very well when used in regard to movable property. But surely the idea of a contractor building for a man a house on the owner's land, and the owner not ordering it to be pulled down or taken away, or his even using it, can not be such an acceptance as will destroy his right to sue for any violation of the contract, if such ·violation be known or unknown at the time. The instruction had no tendency to assist the jury in forming a proper verdict in the case. Now if the evidence showed that the house was so badly built or built of such frail materials that a prudent man would not risk his property in it, if he could see the danger by merely examining the outside appearance, and the owner did put property—furniture, for instance—in such a house, then the owner must lose by his own carelessness. He can not recover for such loss caused by the falling when he, as a prudent man, should not have run the risk. But this does not interfere with his right to sue for a violation of the contract to build. We consider the instruction confines the point of recovery to the damages sustained alone by the mere falling of the house, and, as we think the plaintiff can not recover for any other injury than such as arises from the breach of the contract to build, and

not merely remote consequential damages, we would not reverse for this instruction alone.

The seventh and eighth instructions may be looked upon as producing no injury to the plaintiff. The ninth instruction is improper. Here the phrase, "plaintiff accepted the same," again is used. The jury could be easily misled by this instruction, and it was error to give it. The tenth and twelfth instructions did not injure the plaintiff. There is none marked as eleventh. The thirteenth instruction did not particularly draw the jury's attention to the fact whether it was the improper or defective workmanship, or improper or insufficient materials used in the building, that caused it to give way before the force of the tornado or not. This instruction puts the falling of the house as caused by the tornado in one point of view, or as caused by defective workmanship or the materials in another point of view. Now if it was the improper and insufficient workmanship, or the defectiveness or insufficiency of the materials used, that rendered the house unable to withstand the tornado, then the tornado did not alone produce the damages, and the defendant should not be permitted to hide himself and escape from the consequences of his own conduct behind the force of the storm. This instruction was erroneous. We see no error in giving the fourteenth instruction. The principles laid down in the fifteenth, sixteenth and seventeenth instructions, in regard to damages, can not have prejudiced the plaintiff's case; but the phrase, "accepted the house," or "accepted the same," runs through these instructions, and renders them objectionable. All the way through this long string of instructions the court has been applying the terms of law used in regard to movable property to this contract to erect a house for a man on his own land. Now we will not pretend to say but that the owner may do such acts in regard to the house as will plainly show to the jury that he considered the contract completed and the work performed in accordance therewith, and that he considered the workman discharged from all liability on account of the contract. But to say that a man accepts

a house built on his own land, is to use a phrase well calculated to mislead a jury.

As to the instructions asked by the plaintiff, the first and second were properly refused; of the others, the principles proper to be given were substantially stated to the jury by the court. This court finds nothing improper in refusing to give the instructions asked, when considered with those given by the court.

We can not dismiss this subject without remarking, that this is a most unnecessary suit—a most uncalled for appeal to the courts of the country for redress. There is pending a suit which was before this court and reversed and remanded, in which the matters set forth in this suit are used by defendant in that other suit as a defence, and which this court said he could use to reduce the debt due to the plaintiffs in that action. (Gamache v. Grim, 23 Mo. 38.) Let the judgment below be reversed, and the cause remanded; the other judges concurring.