Woodburn et al. v. Cogdal et al.

JACOB WOODBURN AND THOMAS SCOTT, Appellants, *v.* JOHN COGDAL AND G. F. MEYER, Respondents.

1. *Contract — Sale — Statute of Frauds.* — A sale of personal property is valid under the statute of frauds without an actual delivery, if any part of the price be paid and accepted as earnest money to bind the bargain.
2. *Action for Personal Property—Damages.*—In an action for the delivery of personal property, if the verdict be for defendant the measure of damages will be the value of the property at the time of the seizure, with interest thereon up to the time of trial.
3. *Trial—Exceptions—Evidence.*—The reason for objections to the admission of evidence must be stated in the bill of exceptions.

### *Appeal from St. Louis Court of Common Pleas.*

The instructions given and refused were as follows :

Given for the plaintiffs — "If the jury find from the evidence that the said Yokum, Gaunt & Scroggins sold and delivered the staves to the plaintiffs, and that plaintiffs were at the time of the sale the owners of and entitled to the possession of the said staves, and that the defendants afterwards without the knowledge or consent of plaintiffs took possession of said staves and carried them away, then you must find for the plaintiffs."

Given by the court on its own motion, to which plaintiffs excepted—"In order to consider the goods Richard M. Gaunt may have received at the store of Meyer as earnest to bind the bargain for the sale of the staves, the goods must have been sold and purchased and accepted by said Gaunt on account of the sale of the staves."

Plaintiffs' instructions refused :

1. If the jury believe from the evidence in the case that there remained anything to be done as between the defendants and the said Yokum, Gaunt & Scroggins to consummate a sale of the property mentioned in the petition, such as ascertaining the number or quantity by counting, the paying of the consideration or a part thereof, then there passed to said defendants from the said Yokum, Gaunt & Scroggins no title to the said staves, and you must find for the plaintiffs.

2. If the jury believe from the evidence in the case that the property mentioned in the petition was the property of Yokum, Gaunt & Scroggins, and that they sold and delivered the same to plaintiffs through the agents of plaintiffs, and that the defendants afterwards took possession of the said property without the knowledge or consent of plaintiffs and carried the same away, then you must find for the plaintiffs.

3. The jury are instructed that in order to constitute a complete sale of the property mentioned in the petition from Yokum, Gaunt & Scroggins to the defendants there must have been an ascertainment of the number or quantity of the staves by counting them, and there must have been an actual delivery of the same or a part thereof to the defendants.

4. The jury are instructed that the goods received of Richard M. Gaunt at the store of defendant Meyer, in order to constitute an earnest for the purchase of the staves, must have been so given by the defendants and received by the said Yokum, Gaunt & Scroggins on account of said staves, unless they were so given and received by express agreement.

5. If the jury should find for the defendants, yet if they believe from the evidence in the case that the defendants have never paid the said Yokum, Gaunt & Scroggins for the said staves, and that the plaintiffs have paid to them the price and value of the said staves, they must estimate the damages at only the difference between the net cost of the staves at St. Louis and their value in the St. Louis market at the time they were sold.

6. If the jury believe from the evidence in the case that the said order was presented on the 22d day of March, 1863, at the store of G. F. Meyer, by the payees therein named, for payment, and that payment thereof was refused or failed to be made; or if they believe from the evidence that it was agreed by and between the said defendant Cogdal and the said Yokum, Gaunt & Scroggins that at the time said note was made and signed by the said Cogdal and delivered to the said Yokum, Gaunt & Scroggins, the said Meyer should sign the same when the said order was presented to him for

payment, and that the said note was presented at the said store of said Meyer on the said 22d day of March, 1863, for the purpose of obtaining the signature of said Meyer, and that he refused or failed then and there to sign said note,— then from that time the said Yokum, Gaunt & Scroggins had the right to rescind the whole contract and retain the staves ; and if they believe from the evidence that they from that time regarded and treated the contract as null and sold the said staves to plaintiffs, then they must find for the plaintiffs.

Defendants' instructions given :

1. The jury are instructed that a sale of chattels is good although no transfer of possession may have been made when the purchaser has given or paid any money or property as earnest to bind the bargain ; if, therefore, the sellers of the staves, or one of them, received any goods in part payment for them, the bargain was binding without an actual delivery of the staves.

2. If the jury find from the evidence that Yokum, Gaunt & Scroggins sold and delivered the staves to defendant Cogdal, on credit, before Woodburn & Scott bought the same, then the jury should find for the defendant Cogdal, although they may also find from the evidence that Cogdal failed to pay the amount of said purchase.

3. If under the instructions and evidence the jury find for the defendant, the jury will assess the present value of the property, and also separately damages for the taking and detention of the same from the time the said property was taken from the defendant until the day of trial.

To the granting of which instructions plaintiffs then and there excepted.

*Krum & Decker*, for respondents.

I. This court will not consider objections to testimony appearing in the record unless the grounds of such objection are stated to the court below and appear in the record, although general exceptions may have been reserved—Rosen-

heim v. Am. Ins. Co., 33 Mo. 235 (affirming Field v. Hunter, 8 Mo. 131; Frost v. Prior, 7 Mo. 316; Dickey v. Malachi, 6 Mo. 186; Dozier v. Jerman, 30 Mo. 220); also Green v. Gallagher, 35 Mo. 228.

But it will be seen that the plaintiff had previously offered evidence by his witness Gaunt, in minute detail relating his interview with Meyer's clerk at the presentation of the order, and he has no right to complain that the clerk should state his version of the same interview. Besides it was entirely competent, being upon the question of the receipt of property by Gaunt on this sale to Cogdal; it was part of the *res gestæ*.

II. The court, at the instance of respondents, properly excluded part of the deposition of Gaunt on file as evidence in the cause; this part related to Gaunt's willingness, at the time of his examination, to return the note and draft. It was irrelevant and incompetent evidence.

III. Every instruction refused by the court was properly refused.

(*a*) That any counting of the staves (as declared by appellants' 1st and 3d instructions) was necessary to a complete transfer of the property seems absurd, when they were subject to coopers' count in the market, and the payment was to be made subject to coopers' count as per agreement in evidence.

(*b*) The 4th instruction is unintelligible, but the court substantially gave it of its own motion.

(*c*) By the 5th instruction the statute of replevin was to be overturned in favor of appellants.

The statute gives to defendant the election to have the property in specie or its value, and damages for its detention. By this instruction he was only to recover the difference between the price he agreed to pay Cogdal and the value at the time of seizure. Besides, he is entitled to offset to Yokum, Gaunt & Scroggins any debt which he holds against them when they demand pay on the note.

The sixth instruction was properly refused, because it de-

clared that a failure on the part of Meyer, the drawee, to pay the order on presentment operated as a rescision of the sale.

IV. Upon the whole case, the respondent has shown a complete property in the staves by purchase and delivery at the appointed place long before plaintiffs' purchase.

As to what constitutes a delivery depends of course upon the nature of the article; where it is bulky and cannot be manually kept, circumstances must decide. In this case, they were directed to deliver staves on the bank of the Ohio river; after the staves were there hauled and Cogdal notified thereof, and he came up and received them and paid for them, part by a draft and part by an agreement or note, at a fixed price per thousand, the staves were thereafter at his risk, and the transfer of property was complete as it could be. The ascertained amount of coopers' count was only necessary to arrive at the whole amount due, but was entirely unnecessary to a complete transfer of the property. The whole question has been exhausted by this court in Bass et als. v. Walsh, *ante* p. 192, to which respondent refers.

V. There is evidence of bad faith in this case on the part of appellants; there was testimony tending to show that their agents, Phillips & Butler, knew of Cogdal's purchase; and the fact that one of the stave cutters (Scroggins) failed or refused to go into the second sale, shows they intended to "play sharp" on Cogdal. Phillips said to Dunton that they were sorry they had taken the staves from Cogdal, and that they tried to swindle a man who would not allow them to be swindled.

*Voorhis* and *Mason*, for appellants.

FAGG, Judge, delivered the opinion of the court.

The following general statement of the case will show the points presented for the consideration of the court.

The defendant Cogdal being in possession of a certain quantity of staves, the plaintiffs, claiming to be the owners, commenced suit therefor in the Court of Common Pleas for

St. Louis county, under the provisions of that portion of the practice act relating to the claim and delivery of personal property.   Meyer failed to appear and plead to the petition, and judgment was taken against him by default; but there was no further prosecution of the suit as to him, the case being tried by a jury upon the issues tendered by the separate answer of Cogdal.   Both plaintiffs and defendant claim to be the owners of the property by purchase from the same parties in the State of Illinois.   It is shown that Cogdal contracted with these parties sometime during the winter of 1862 and 1863 to furnish him a quantity of staves, to be delivered on the bank of the Ohio river; that on or about the 10th of March, 1863, the lot of staves in question, supposed to be about 17,000, were delivered as aforesaid, and Cogdal agreed to purchase them at $13 per 1,000, giving at the time an order on the said G. F. Meyer for $100, and executing his note payable in the month of May thereafter for the balance.   The actual number, as shown by the note, was to be ascertained by the coopers' count when the staves were taken to market; and the contract between the parties was that Meyer should also sign the note with Cogdal.   The order and note were presented in due time at Meyer's place of business, but he was not in, and his clerk having no money to pay the note endorsed an acceptance upon it in Meyer's name, and directed the holder to call at a future day, when the amount would be paid and the note signed according to the agreement — all of which was satisfactory.   A small amount of goods was taken by the holder of the order and note, and charged to Cogdal.

There was no farther attempt to collect the amount of the order, or to procure Meyer's signature to the note, but the staves were resold to the plaintiff in this suit; Cogdal in the meantime got possession of the staves and shipped them to St. Louis, where they were taken out of his possession by legal process.   The real question for the jury was whether there was such a sale and delivery to Cogdal as to transfer to him the ownership of the property.   We think it was fair-

ly presented to the jury by the instructions, and if there appeared to be no other reason for disturbing the verdict the judgment of the court below would be affirmed. It will be unnecessary to comment upon each of the instructions separately.

The instruction given at the instance of plaintiffs very fairly presented the question of the ownership of the staves at the time Cogdal took possession of them. It made no difference whether the plaintiffs claimed by purchase made in their own proper person or by agent, and the giving of the instruction based upon the theory of their purchase through an agent could really have made no difference in the finding of the jury. Two of the instructions asked by plaintiffs and refused were drawn upon the theory that the counting of the staves and an actual delivery were necessary to complete the sale; they were manifestly improper. The testimony in relation to the counting of the staves tended to show that that was necessary only to ascertain how much would be due upon the note. The jury were told that a sale of personal property was good, notwithstanding there was no actual delivery, if anything had been paid to bind the bargain.

Another instruction, designated in the bill of exceptions as number 4 of the series asked by plaintiff and refused by the court, is not very intelligible; but the idea seems to have been that the goods sold to the holders of the note, in order to bind the bargain for the staves, must have been accepted upon an express agreement for that purpose. But the other instruction given for the defendant sufficiently covered this point, and in a more intelligible form. The last was in reference to the measure of damages. It asserted the rule to be upon a finding for the defendant, that his damages must be estimated at the difference between the price at which he had contracted for the staves and the price in the St. Louis market at the time they were sold. The court committed no error in refusing this instruction.

However, the measure of damages was not correctly stated in the instruction given for the defendant, and the case must

be reversed and remanded for trial in accordance with the views herein presented. The true measure of damages in such cases is the value of the property at the time of seizure, with interest thereon at the rate of six per cent. per annum until the time of trial.

Another point in reference to the admission of improper evidence is raised by the appellants' brief, but will not be considered because the bill of exceptions fails to state the grounds upon which the testimony was objected to at the time of trial. It has been uniformly held by this court that such objections must be specifically shown by the record to entitle them to any consideration here.

For the reasons above stated, the judgment of the court below will be reversed and the cause remanded. The other judges concur.