Buckley v. Knapp et al.

---

ELIZA P. BUCKLEY, Respondent, *v.* JOHN KNAPP *et al.*, Appellants.

1. *Damages — Libel — Justification — Close of case, who entitled to.* — When defendants in an action for libel plead justification, that plea does not entitle them to open and close the case. Where, as in such case, the damages are unliquidated, and to be computed by a jury and depend upon proof, the plaintiff is generally entitled to open.

2. *Damages — Libel — Justification — Want of knowledge of publication of libel.* — Under the statute touching libel (Wagn. Stat. 1021, § 44), defendant may allege both the truth of the matter charged as defamatory and any circumstances in mitigation. But when the defendant bases his whole defense on the truth of the matter charged, testimony showing that the libelous article was published without his knowledge is inadmissible.

3. *Damages — Libel — Newspaper proprietor, responsibility of.* — The proprietor of a newspaper is responsible for whatever appears in its columns. It is unnecessary to show that he knew of the publication or authorized it.

4. *Damages — Malice, express and implied.* — When slanderous words are spoken, or a libelous article is published falsely, the law will imply malice. There is no necessity of proving express malice.

5. *Damages — Libel, vindictive damages allowed in.* — Vindictive damages may be allowed in civil proceedings. In all actions of tort, whether for assault

Buckley v. Knapp et al.

and battery, or for trespass or libel or slander, where there are circumstances of oppression, malice or negligence, exemplary damages are allowed, not only to compensate the sufferer, but to punish the offender.

6. *Damages — Libel — Wealth of defendant may be shown in estimating damages.*—In an action for libel, evidence may be properly introduced to show defendant's wealth as an element in estimating the damages.

7. *Evidence, formal objections to, insufficient.*— Objections to evidence which are merely formal, specifying no reasons therefor, are uniformly held to be insufficient.

*Appeal from St. Louis. Circuit Court.*

*T. G. C. Davis*, for appellants.

I. The deposition of John N. Edwards, proving that the defendants had nothing to do with the composition or publication of the alleged libel, and in fact knew nothing about it until after it appeared in the *Republican*, was proper evidence to rebut malice in fact, and also "to enable the jury to estimate the probable *quantum* of injury sustained." (2 Stark. Sland. 78 ; Thornton v. Stephen, 2 Moody & R. 45–6 ; Richards v. Richards, *id.* 558.) And this evidence was proper in mitigation of damages under the justification. (Chalmers v. Shackell, 6 Carr. & P. 475 ; Morris v. Duane, 1 Binn. 90 ; Kennedy v. Gregory, *id.* 85 ; Coleman v. Southwick, 9 Johns. 46 ; Hotchkiss v. Lathrop, 1 Johns. 288 ; Root v. King, 7 Cow. 613, 632–3 ; Gillman v. Lowell, 8 Wend. 575 ; Parsons v. Harper, 16 Gratt. 76 ; Shank v. Case, 1 Ind. 170 ; Murphy v. Stout, *id.* 372 ; Swails v. Butcher, 2 Ind. 84 ; Shoulty v. Miller, 1 Ind. 544 ; Sloan v. Petrie, 15 Ill. 425 ; 16 Ill. 405 ; McAlister v. Tibley, 25 Me. 474 ; Sanders v. Johnson, 6 Blackf. 55.) It is not necessary to plead mitigating circumstances in mitigation of damages, under the code of Indiana (just like our own code), because evidence given under a plea of justification, but not fully proving the plea, will be considered in mitigation of the damages. (O'Connor v. O'Connor, 27 Ind. 70 ; Sweeny v. Nave *et al.*, 22 Ind. 180 ; 1 B. Monr. 172 ; 18 B. Monr. 786 ; Tinsley v. Freeman, 50 Ill. 497.) A plea of justification, not fully sustained, does not aggravate the damage in an action for libel or slander in this State ; and evidence given under such a plea may reduce the

damages to a nominal sum. The reason for pleading facts and circumstances in mitigation of damages in the courts of New York never prevailed in Indiana nor in this State; hence the decisions in Indiana, notwithstanding the provision of the New York code, was literally copied into that of Indiana, and it has been copied into our own code. (See O'Connor v. O'Connor, *supra*; Sweeney v. Nave *et al.*, *supra*; Nelson v. Musgrave, 10 Mo. 649; also see Detroit Daily Post Co. *et al.* v. McArthur, 16 Mich. 451.)

II. Evidence of the wealth or pecuniary circumstances of a defendant is not admissible, in actions for libel and slander, to enhance the damages, or for any other purpose. (Townsh. Sland. and Libel, 479, § 391; Meyers v. Malcolm, 6 Hill, 292; Palmer v. Haskins, 28 Barb. 90; Morris v. Barker, 4 Harrington, Del., 520; Ware v. Curtledge, 24 Ala. 622; Taber v. Hutson, 2 Ind. 322; Moody v. Osgood, 50 Barb. 632; Stout v. Proll, 1 Cox, N. J., 78–80; Grandy v. Humphries, 35 Ala., N. S., 626; Pool v. Deevers, 30 Ala. 675.)

III. The court erred in charging the jury that if they found for the plaintiff they might give the plaintiff compensatory and exemplary damages. A libeller may be indicted and punished. (Weber v. State, 10 Mo. 4.) Exemplary or punitory damages are not recoverable in such cases. (Austin v. Wilson, 4 Cush. 273; Taber v. Hutson, 5 Ind. 326; 11 Ind. 159.) The general rule is to give such damages as will compensate the plaintiff, without any reference whatever to the operation of the verdict upon the minds of others as an example, or to deter them from the commission of similar wrong. Crimes are punished in courts of criminal jurisdiction, for the reformation of offenders, and also to deter others from offending in like cases; while damages in civil actions are given to repair losses and compensate the injured to the extent of the injury sustained in every case of actual wrong. Intentional and malicious wrongs have been made exceptions, by the courts, to the general rule of compensation in not a few cases. The latest decision of our own Supreme Court on the subject inclines strongly to the principle of compensation. (Levering *et al.* v. Union Trans. & Ins. Co., 42 Mo. 88; Goetz

v. Ambs, 22 Mo. 170; 27 Mo. 33; 2 Greenl. Ev. 257, § 253; Malone v. Murphy, 2 Kan. 262; Hodgson v. Millward *et al.*, 3 Grant's Lead. Cas. 411; Flint v. Clark, 13 Conn. 366, 370; Bristol Manuf. Co. v. Gridley, 28 Conn. 288; Markham v. Russell, 12 Allen, 573; Harrison v. Swift, 13 Allen, 144.)

IV. The damages found for the plaintiff are excessive, and the court ought to have granted the defendants' motion for a new trial on that ground. (Goetz v. Ambs, *supra;* Kinsey v. Wallace, 36 Cal. 480; Swartzel v. Dey, 3 Kan. 244.)

*Lackland, Martin & Lackland,* for appellants.

I. The court erred in ruling out the testimony of the witness Edwards. If he wrote the article containing the alleged libel, and it was published in the paper of appellants without their knowledge or consent, these facts were competent evidence in mitigation of damages.

II. The court erred in admitting testimony tending to show the pecuniary condition of the defendants. Such testimony is incompetent. (Myers v. Malcolm, 6 Hill, N. Y., 292; Ware v. Curtlege, 24 Ala. 622; Palmer v. Haskins, 28 Barb. 90; Morris v. Baker, 4 Harring. 520; James v. Biddington, 6 Carr. & P. 590; Coryell v. Colbaugh, 1 Coxe, N. J., 77; Townsh. Sland. 479, § 391.)

III. The following cases, cited as authorities against this position, were reviewed at length: Fry v. Bennett, 4 Duer, 247; Bennett v. Hyde, 6 Conn. 24; Case v. Marks, 20 Conn. 248; Adcock v. Mead, 8 Ired. 360; Karney v. Paisley, 13 Iowa, 92; Humphries v. Parker, 52 Me. 502; Halsey v. Brooks, 20 Ill. 115; Lewis v. Chapman, 19 Barb. 252; State v. Barrett, 7 Pick. 86; McNamara v. King, 2 Gilman, Ill., 432; McAlmont v. McClellan, 14 S. & R. 359; Grabe v. Margrave, 4 Ill. 372; Reed v. Davis, 4 Pick. 216.

IV. If the appellants composed and publised a libel against the respondent, they are liable to be tried and convicted for it, and may be punished both by fine and imprisonment. (2 Wagn. Stat. 886, § 2; Austin v. Wilson, 4 Cush. 273; Tabor v. Hutson, 5 Ind. 159; Weber v. State, 10 Mo. 4.) This is a reason why

punitory damages should not be given in this suit; otherwise the defendants might be punished twice for the same offense.

V. The court erred in the first instruction, because it assumes by implication that the appellants charged respondent with fornication. This should have been left to the jury. It also assumes that the action of appellants was unlawful. This shut out inquiry as to the facts which made it so.

VI. The second instruction is erroneous because it required the defendants to establish by proof divers fornications with divers persons. One act of fornication, or divers acts of fornication with one person, were declared by the court as not sufficient defense under the answer.

*Dailey & Adams*, with *H. A. Clover*, for respondent.

I. This being an action of tort, and the damages being unascertained, the court below properly permitted the plaintiff to open and close the case. (Carter v. Jones, 5 C. & P. 641; Mercer v. Whall, 5 Q. B. 447; Cotton v. James, M. & M. 273; 1 Greenl. Ev. 102, and note 4.)

II. The petition in the divorce suit of Robert Buckley v. Jane Buckley, and the deposition of Edwards, offered by defendants to show, in mitigation of damages, that the defendants were not the originators of the libel, were properly excluded: 1. Because this circumstance was not pleaded in mitigation. The defendant in libel and slander must set up the mitigating facts relied on (Gen. Stat. 1865, ch. 165, § 44), and especially must this be done when the truth is pleaded. (Weaver v. Hendricks, 30 Mo. 507.) 2. Because such a circumstance is not admissible in evidence in mitigation of damages, under the rules of evidence. (Anthony v. Stevens, 1 Mo. 254; Moberly v. Preston, 8 Mo. 462.) The rule of evidence is not changed by the statute cited above, but the rule of pleading only.

III. Evidence of the wealth of the defendant was properly admitted. 1. The plea of truth in the answer, unsupported by testimony, was evidence of actual malice. (1 Hill. Torts, 425, § 190; 24 Ala. 174; 4 Comst. 162; 5 Yerg. 211; 13 Penn. 610; 4 Shep. 13; 1 Am. Lead. Cas., Harr. & Wall., 179; 2

Pick. 113, 121; 3 Watts & Serg. 555; 5 Ohio, 225; 5 How., Miss., 158.) Hence punitory damages were authorized (Franz v. Hilterbrand, 45 Mo. 121, and cases cited), and evidence of defendants' wealth was necessary to enable the jury intelligently to determine the amount of damages requisite to inflict the proper punishment. (26 Md. 380; 32 Ga. 374; 41 Ill. 141; 52 Me. 502; 6 Conn. 24; 2 Whart. 314; 3 Mass. 546.) 2. Evidence of wealth tended to establish the social rank and influence of defendants, and their consequent power to injure plaintiffs by their publication. (3 Mass., *supra*; 2 Whart., *supra*; 14 Serg. & R. 359, 362; 8 Wend. 573; 52 Me., *supra*.)

IV. The record shows no specific ground of objection to any other testimony complained of, and this court will not consider the objections. (23 Mo. 438; 25 Mo. 41; 32 Mo. 255; 39 Mo. 229; 40 Mo. 369.)

V. The instruction authorizing exemplary damages was properly given for plaintiff. (See authorities, *supra*.) This instruction, when taken in connection with the fifth given for defendants, is otherwise unobjectionable.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought her action in the Circuit Court, claiming $25,000 damages, on account of a libel imputing a want of chastity to her, published in the St. Louis *Republican*, of which paper the defendants were the proprietors and owners.

The defendants answered, admitted the publication, justifying it as true, and alleging that the plaintiff had, before the publication of the article, committed and been guilty of fornication; that she was of bad fame, reputation and credit for chastity, and that she was so wanting in chastity, modesty and womanly innocence that she could not be, and was not, by means of the publication, injured in her good name, fame and credit. To this answer a replication was filed, and the jury, after hearing the testimony, rendered a verdict for the plaintiff, awarding her $5,000 damages. A point is raised upon the ruling of the court in permitting the plaintiff to open and close the case. It is insisted that as the defendants pleaded justification they assumed the *onus* or burden

of proof, and therefore the privilege of opening and closing the case to the jury justly belonged to them. But we perceive no error in the action of the court. The damages were unliquidated and to be computed by the jury, and depended upon proof, and where such is the case the plaintiff is generally entitled to open and close. Mr. Greenleaf says it is generally deemed a matter of discretion, to be ordered by the judge at the trial as he may think most conducive to the administration of justice; but the weight of authority as well as the analogies of the law seem to be in favor of giving the opening and closing of the cause to the plaintiff wherever the damages are in dispute, unliquidated, and to be settled by the jury upon such evidence as may be adduced, and not by computation alone. (1 Greenl. Ev., § 76.)

Upon the trial the defendants offered in evidence the deposition of John N. Edwards, but for what purpose was not stated. This was objected to and excluded by the court. From the deposition itself it seems that Edwards was the local reporter for the paper, and wrote and had inserted the libelous article complained of without the knowledge of the proprietors. But under the state of the pleadings we cannot see that the evidence was admissible. The defendants justified and based their whole defense upon the truth of their answer. The statute provides that in actions of libel and slander the defendant may in his answer allege both the truth of the matter charged as defamatory, and any mitigating circumstances admissible in evidence, to reduce the amount of damages; and, whether he prove the justification or not, he may give in evidence the mitigating circumstances. (2 Wagn. Stat. 1021, § 44.) There was no allegation of mitigating circumstances, and therefore the deposition was not relevant, as it had no tendency to support the answer of justification.

In an early case in this court, in an action of slander, where evidence had been introduced to show that the words had been spoken by others, it was adjudged that the evidence was inadmissible; and it was said that if fifty or five hundred persons had made use of similar slanderous words of the plaintiff, it would not avail the defendant either as a justification or in mitigation of damages. Each one must answer for his own acts; and if

such kind of testimony were to be admitted, nothing would be more easy than by collusion with others to make use of the same words, and thus deprive the plaintiff of any possible mode of redress for the most slanderous charges. All that would be necessary to be proven in a particular action would be that any other persons had slandered the plaintiff also. (Anthony v. Stephens, 1 Mo. 254, affirmed in Moberly v. Preston, 8 Mo. 462.)

As respects a publication by writing a libel, not only the publisher, but all who in anywise aid or are concerned in the production of the writing, are liable as publishers. The publication of the writing is the act of all concerned in the production of the writing. Thus, if one composes and dictates, a second writes, and a third publishes, all are liable as publishers, and each is liable as a publisher. The law denominates them all makers and all publishers. (Townsh. Sland. and Lib., § 115; 2 Stark. Sland. 225; Bish. Crim. Law, § 931.) The proprietor of a newspaper is responsible for whatever appears in its columns. It is unnecessary to show that he knew of the publication or authorized it (Huff v. Bennett, 4 Sandf. 120), for he is liable even though the publication was made in his absence and without his knowledge, by an agent to whom he had given express instructions to publish nothing exceptionable, personal or abusive, which might be brought in by the author of the libel. (Dunn v. v. Hall, 1 Carter, Ind., 344; 1 Smith, 228.)

All the instructions asked for by the defendants were given by the court, but it is insisted that those given on the part of the plaintiff were objectionable. The first instruction in behalf of the plaintiff told the jury that if they believed and found from the evidence that the matter stated in plaintiff's petition as having been published by defendants of and concerning the plaintiff, and charging her with fornication, was and is untrue and defamatory of her, they should find the issue for the plaintiff and assess damages in her behalf, by reason of the unlawful conduct of the defendants, in such amount as they might deem proper, under a view of the whole case, exemplary and compensatory, for the disgrace and dishonor attempted to be cast upon her, but not exceeding the amount claimed in the petition.

The second declaration instructed the jury that in law the plaintiff was presumed innocent of the charges made against her in the article published, and that the defendants having by their answer asserted the truth of the matters therein stated concerning her, it was incumbent upon the defendants to establish the truth of the allegations before they could rely thereon as a defense to plaintiff's action; and if they did not find that the defendants had proved the truth of the matters stated in their answer, in justification of the publication complained of, they should find their verdict for the plaintiff.

The third instruction defined the meaning of malice, and stated that the term "malice," in common acceptation, meant ill-will against a person; but in its legal sense, and as used in the petition, which charged the defendants with having maliciously published matter defamatory of plaintiff, it meant a wrongful act done intentionally without legal justification or excuse, and that malice in fact was not an essential matter in the case, but that legal malice as previously defined, which was to be inferred from the publication, was sufficient.

For the defendants the court charged:

1. That if the jury believed from the evidence that the plaintiff was guilty of fornication, as alleged in the answer, they should find a verdict for the defendants.

2. That the facts put in issue by the pleadings were provable by circumstantial evidence as well as by positive testimony, and it was the province of the jury to weigh and estimate all the evidence before coming to a conclusion.

3. That the character of the plaintiff could be established by direct proof of acts of prostitution on her part, or by circumstantial evidence; and if, in the absence of positive proof, the defendants established to the satisfaction of the jury such a train of circumstances as to show that the plaintiff, prior to the publication of the article set forth, was not a person of chastity, or that she was not a chaste woman, then the verdict ought to be for the defendants.

4. That it was for the jury to give or withhold belief from any witness who they might be satisfied had willfully

sworn falsely in relation to any material fact given in evidence on either side.

5. If the jury believed from the evidence that the reputation of the plaintiff was bad for chastity before the publication of the article, even though they might not be satisfied from the evidence of the entire truth of the defendants' answer, still they were bound to consider such reputation in mitigation of damages, and that an action for defamation could not be sustained by a person of whom the truth was published, though the publication were made from actual malice; and therefore, if it were shown by the evidence that the article published was true so far as it related to the plaintiff, a verdict should be rendered for the defendants.

When the instructions are all taken and construed together it is not easy to perceive how they could have been more favorable to the defendants. Defendants' fifth instruction so completely qualifies the first one given at the instance of the plaintiff that it is utterly impossible to allege anything objectionable against it.

We see no error in the ruling of the court in reference to the question of malice. There was no attempt made to show express or actual malice for the purpose of increasing or aggravating the damages. The case was rested wholly on the malice inferred or implied by law from the wrongful publication. Malice, in legal understanding, implies no more than willfulness. When slanderous words are spoken, or a libelous article is published falsely, the law will affix malice to them. There is no necessity of proving express malice. (Townsh. Lib. and Sland., § 124; Hudson v. Garner, 22 Mo. 423; Goetz v. Ambs, 27 Mo. 28.)

Whilst malice in its common acceptation means ill-will toward some person, in its legal sense it is defined to be a wrongful act done intentionally without legal justification or excuse; and in ordinary actions for slander or libel, malice in law is sufficient, and it is to be inferred from the publication of the slanderous matter without such justification or excuse. In most instances where an injury is committed against the person or property of another, the actual intention of the author of the mischief is immaterial. The law considers every one whose neglect, care-

11—VOL. XLVIII.

lessness and want of due regard for the rights of others occasions injury to them, equally culpable and bound to make reparation to the extent of such injury as one who willfully does the mischief. It can make no difference to the party injured whether the injury was occasioned by a willful act or by negligence or a careless disregard of his rights, and such a consideration ought not to affect his remedy.

It is objected that the court instructed the jury to give exemplary or vindictive damages, and the counsel have strenuously argued that damages should be compensatory only; that punishment belongs to another branch of the law, and that vindictive damages should not be allowed in a civil proceeding. But this point has been so firmly established, and so long settled contrary to this view, that it is no longer open to controversy. In all actions of tort, whether for assault and battery, or for trespass or libel or slander, where there are circumstances of oppression, malice or negligence, exemplary damages are allowed, not only to compensate the sufferer, but to punish the offender. This is now the general and almost universal doctrine, and is thoroughly embedded in the jurisprudence of this State. (Milburn v. Beach, 14 Mo. 104; Corwin v. Walter, 18 Mo. 73; Walker v. Borland, 21 Mo. 289; Kennedy v. North Mo. R.R. Co., 36 Mo. 351; Callaghan v. Cafferata, 39 Mo. 137; Franz v. Hilterbrand, 45 Mo. 121.)

The remaining question to be considered is the action of the court in permitting evidence to be introduced to show the defendants' wealth as an element in estimating the damages. Upon this question it is conceded that the authorities have not been quite uniform. But the weight of the authorities, and reason, we think, is decidedly in favor of the admissibility of the evidence. Mr. Greenleaf, who strongly opposes the doctrine enunciated by Sedgwick in favor of exemplary or vindictive damages, admits the point raised in this case, and in speaking of the action for assault and battery he says that the jury are not confined to the mere corporal injury which the plaintiff has sustained, but they are at liberty to consider the malice of the defendant, the insulting character of his conduct, the rank in life of the several

parties, and all the circumstances of the outrage, and thereupon to award such exemplary damages as the circumstances may in their judgment require. (2 Greenl. Ev., § 89.)

In Hosley v. Brooks, 20 Ill. 115, the court declared that in slander, the jury, in estimating the damages, may consider the defendant's pecuniary circumstances and his position and influence in society. The defendant's wealth is an element in his social rank and influence, and therefore tends to show the extent of the injury from his slanderous speech. And such seems to be now the case in actions for malicious torts generally. (Humphreys v. Parker, 52 Me. 502; Lewis v. Chapman, 19 Barb 252; Richards v. Booth, 4 Wis. 67; Rowe v. Moses, 9 Rich. 423; Bell v. Morrison, 27 Miss. 68; McAuley v. Birkhead, 13 Ired. 28.)

In Buller's N. P. 13, it is laid down that evidence of the circumstances of the defendant is admissible in order to increase the damages. This is cited in 2 Phill. Ev., C. & H. ed., 258.

In Bump v. Betts, 23 Wend. 85, the court, in deciding on the question of excessive damages, points to the fact that the defendant had the command of great wealth, and that the plaintiff was a poor man, as two of the circumstances justifying the heavy verdict.

In the case of McConnell v. Hampton, 12 Johns. 235, proof was received that Gen. Hampton, the defendant, was in receipt of an annual income of $60,000. Such evidence was received to justify a heavy verdict and to show the ability of the defendant to pay.

In McNamara v. King, 2 Gilm. 432, where an action of trespass was brought for assault and battery, the court permitted the plaintiff to prove that he was a poor man with a large family, and that the defendant was a wealthy man, with no children and but a small family; and it was distinctly announced that the condition in life and circumstances of the parties were peculiarly the proper subjects for the jury in estimating damages; that they might take into consideration the pecuniary resources of the defendant, and might give exemplary damages, not only to com-

pensate the plaintiff, but to punish the defendant, according to the circumstances of the case.

In all cases where vindictive damages are allowed it is upon the theory that the defendant's conduct has been such that he deserves to be punished, and they are given with a view of measuring out punishment to him as well as awarding compensation to the plaintiff. When we arrive at this conclusion it seems to me that it logically follows that the inquiry as to the pecuniary resources of the defendant becomes pertinent and material, for what would be a severe punishment to a very poor man would be of no consequence to a rich one.

For the purpose of showing defendants' wealth the assessor's books were put in evidence, and to this the defendants objected; but the objections were merely formal, specifying no reasons therefor, and such objections to the admission of evidence this court has uniformly held to be insufficient. (Clark v. Conway, 23 Mo. 438; Grimm v. Gamache, 25 Mo. 41; Woodburn v. Cogdal, 39 Mo. 222; St. Louis Public Schools v. Risley, 40 Mo. 357.) If the objections are specified and pointed out on the trial at the court below, the party offering the evidence may obviate them at once; but it will not do for a party to content himself with a general objection in the court below, and then make a special, pointed objection for the first time in this court.

Upon an attentive and careful examination of the whole record, we have been unable to discover any such error as would authorize us to reverse this cause.

Judgment affirmed. The other judges concur.