J. W. LANIUS, Respondent, v. DRUGGIST PUBLISHING COMPANY, Appellant.

### St. Louis Court of Appeals, December 8, 1885.

1. LIBEL—EVIDENCE—MALICE.—In actions for libel, evidence of statements, oral or written, made by the defendant after the publication of the libel, is admisible on the question of malice in fact.

2. —— PUNITIVE DAMAGES.—Evidence which shows that the defendant could have ascertained from his own books of account that the statements published were false, justifies an instruction for punitive damages on the ground of gross carelessness or recklessness.

3. —— EXCESSIVE FINDING—APPELLATE PRACTICE.—In cases where there is no legal rule for the admeasurement of damages, appellate courts will not reverse the judgment on the ground of an excessive finding, unless it appears that the jury disobeyed instructions or acted from motives of passion or prejudice.

APPEAL from the St. Louis Circuit Court, AMOS M. THAYER, Judge.

*Affirmed.*

H. A. CLOVER, for the appellant.

DYER, LEE & ELLIS, for the respondent.

ROMBAUER, J., delivered the opinion of the court.

This is an action of libel in which the plaintiff recovered a verdict and judgment for $2,000.

The errors complained of are: that the court admitted illegal testimony offered by the plaintiff; that it

misinstructed the jury on the question of damages; and that the verdict is excessive.

The defendant is a corporation, and the publisher of the National Druggist, a newspaper published weekly in the city of St. Louis. The paper had at the date of the injury complained of a circulation of 1,850 copies, of which number three hundred were in this state outside of the city of St. Louis. The plaintiff is a resident of Marion county, Missouri, and has been for several years past engaged in soliciting subscriptions for medical journals published in this state. In March, 1883, he became a solicitor for the defendant's newspaper, and was published as such in the columns of the National Druggist. This appointment was never revoked, and it was shown by the account books of the defendant, that he obtained a number of subscriptions, the last prior to the one hereinafter mentioned being obtained April 22, 1884. November 24, 1884, he obtained the subscription of one Crim for which he remitted to the defendant only in January following, but, as the plaintiff's testimony tended to show, prior to the publication of the libel complained of, which was published in the defendant's paper January 16, 1885, and is in the following words:

"A fellow, styling himself John W. Lanius, is traveling through the country soliciting subscriptions and receiving money on our account. We have no such agent, and it is unnecessary to say that none of the money collected by him finds its way to this office. Subscribers to the National Druggist should remit direct to us, or pay only to Mr. J. L. Baker, who is our authorized agent in the west, or to reputable news agencies."

The plaintiff, upon learning of this libel, wrote to the defendant January 26, 1885, calling its attention to the injury done him, and stating that he trusted to their sense of honor to repair it as best they could. In answer to this the defendant's editor wrote to the plaintiff five days thereafter, offering to make a statement in the paper that the plaintiff had made a satisfactory explanation, but not offering in any way to retract the libel,

which its own prior publication of the plaintiff's agency, and its own account books demonstrated to be false. To this letter the plaintiff replied February 6, giving details of his employment, and asking for an *amende honorable.* Under date of February 17, the defendant's editor replied to this last letter, that the defendant would make whatever reparation it could, but would first like to hear from the plaintiff more of the particulars of the arrangement made with him, particularly as to date. In answer to this last letter the plaintiff informed the defendant that he had placed the matter in the hands of his attorney.

Between the date of the libel, and the institution of the suit, at least five publications of the National Druggist were made, a number of them after the defendant's attention was called to the libel by the plaintiff, but no retraction was made, either prior or subsequent to the institution of the suit.

The evidence which the defendent claims was illegally admitted against its objection is the correspondence above detailed. We are not referred to any authorities on that subject by either party, but regard it as an elementary proposition that such evidence is always admissible on the question of malice, where the subsequent statements or correspondence have a direct connection with the libel complained of. Heard, Lib., sect. 2; Stark, Sland. 47, 53; 2 Greenl. Ev., sect. 418, notes 1 and 2.

Here the defendant pleaded want of actual malice, in mitigation of damages, and its correspondence with the plaintiff subsequent to the publication of the libel was pertinent evidence for the consideration of the jury on that question.

The next error complained of is misdirection of the jury on the question of damages. On that subject the court instructed the jury, on request of the defendant:

"The jury are instructed that if the evidence given in the cause establishes that the defendant published the article in question in good faith, and through an honest mistake as to the facts stated therein, and without malice in fact towards the defendant, and without any intention

of injuring him, and honestly believing that the facts as stated in said article were true, then the plaintiff can only recover the actual damages which the jury may believe and find he has sustained by reason of the publication complained of, and nothing more."

And of its own motion: "The court instructs the jury that the publication complained of and set out in the petition is libelous, and further, that it stands admitted that the defendant intentionally made the publication of and concerning the plaintiff. Therefore, the court instructs the jury that you should return a verdict for the plaintiff, in such sum as you believe from the evidence will be a fair compensation for the injury naturally and probably done to the plaintiff's reputation and character by the publication in question. And if the jury believe from the evidence that the defendant, in causing the publication to be made, acted recklessly and in wanton disregard of the plaintiff's rights, then, in addition to the compensation for the actual damage done, you may allow such exemplary damages as under all the circumstances you think the defendant ought to be punished with."

It is the last part of this second instruction, which authorizes punitive damages, which is complained of.

In *Buckley v. Knapp* (48 Mo. 162), where the plea was justification, but no malice in fact was shown, the court instructed the jury that they might assess the damages "in such amount as they might deem proper, under a view of the whole case, exemplary and compensatory, for the disgrace and dishonor attempted to be cast on the plaintiff."

In approving of this instruction, the supreme court held: "In all actions of tort, whether for assault and battery, or for trespass, or libel, or slander, where there are circumstances of oppression, or malice, or negligence, exemplary damages are allowed, not only to compensate the sufferer but to punish the offender. This is now the general and universal doctrine, and is thoroughly imbedded in the jurisprudence of this state." The court then

cites a number of authorities in support of the proposition.

Here the testimony did show, to say the least, gross negligence on the part of the defendant, and punitive damages were warranted.

The instruction offered by the defendant in mitigation of damages was properly refused, as containing comments upon the evidence. Nor could the court legally pick out one word of a libelous sentence, and tell the jury that that word was not libelous, as the defendant's instruction touching the word "fellow" asked it to do.

There was, therefore, no error in the instructions. We are asked to vacate the verdict because the damages are excessive. There is no measure of damages fixed by law in this class of cases which could guide this court in determining the legal merit of that request. We do not deny the proposition that appellate courts may mitigate damages, but if they ever do so in cases where there is no fixed standard of the measure of damages, it is in cases where the prejudice of the jury or their disregard of instructions is apparent upon the record. This is not such a case.

All the judges concurring, the judgment of the trial court is affirmed.