Gregory v. Chambers.

GREGORY, *Appellant*, v. CHAMBERS.

1. **Malicious Prosecution**: DAMAGES. In an action for malicious prosecution, the jury, if they find for the plaintiff, may, but they are not bound to allow him counsel fees paid in defending against the prosecution.

2. This Court will not reverse a judgment because the jury appear to have disregarded evidence. They may have discredited it.

3. **Leading Questions.** It is no error for the trial court to rule out a question which suggests the answer desired, or calls for the opinion of the witness where the jury should form one themselves from the facts.

4. **Malicious Prosecution**: EVIDENCE OF CHARACTER. In an action for malicious prosecution, evidence of the general bad reputation of the plaintiff is admissible, in mitigation of damages, if not to aid in making out the defense of probable cause.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Bell & Huff* and *Erskine & Foster* for appellant.

*Pattison & Crane* for respondent.

PHILIPS, C.—Action for malicious prosecution. The petition alleged that the defendant maliciously and without probable cause, caused his arrest under an affidavit lodged in the St. Louis court of criminal correction for embezzlement of $86.50, the property of defendant; that under the warrant the plaintiff was arrested and confined in jail for one day; that he was brought before the court for trial and prosecuted by defendant; that he was discharged and the prosecution determined. Judgment for $10,000 damages was prayed for. The answer tendered the general issue. On the trial the bill of exceptions shows the affidavit of Chambers was read, made in "attachment suit before Justice J. C. H. Cunningham." No other affidavit is shown. The warrant for Gregory's arrest was read.

The plaintiff testified that he was in jail twenty-four

hours; that his wife employed an attorney that cost him $101. One Reid testified, for plaintiff, that he was at the court of criminal correction at the time the case of Gregory against Chambers was tried; that he prosecuted—examined the witnesses; that Mr. Chambers was present as a witness for the State. The question was then asked witness: "State Mr. Chambers' manner on that occasion; was it vindictive, or otherwise?" This was objected to, and the objection sustained. Witness was also asked: "Are you able to state what was said and done at that trial? If so, go on and give it to the jury." This question was also objected to by the defendant, and excluded by the court. The witness was then asked: "After he gave his testimony, he did what?" Ans. "He took his seat by me, and suggested points all the way through the trial."

Gregory, it seems to have been assumed, was acquitted of the charge in the affidavit; though neither the affidavit nor judgment appears in the bill of exceptions.

On the part of the defendant, Thomas Boyd was sworn, and testified that he and the plaintiff Gregory were both in the employ of defendant Chambers in 1875; that plaintiff was employed to deliver books for Chambers and collect the money for them; that it was witness' business to keep an account of the books taken by plaintiff for delivery, and plaintiff's duty to account to witness each evening for the money received; that plaintiff left Chambers' employ without warning and went to New York, and that when he left he was short in his accounts; that he wrote a letter to Chambers from New York, in which he acknowledged that he had used Chambers very badly, that he wanted to get back to his family, but was afraid of prosecution. Witness stated the contents of this letter, the letter itself being shown to have been lost. The witness was then asked what was plaintiff's reputation in the community previous to 1875. To this plaintiff objected on the ground that it was incompetent, but the court allowed the evidence, and the witness stated that "it was bad." There was considerable other

testimony to the same effect. Witness also stated, without any objection on plaintiff's part, that on two previous occasions while plaintiff was in Chambers' employ he, plaintiff, failed to account for money—for about $600 in all; that on the first occasion he was behind $256 or $265.

The defendant's testimony tended to show grounds of probable cause for his action and his good faith, and that he had acted on the advice of counsel, etc.

Upon the evidence and the instructions given by the court to the jury, a verdict was rendered in favor of plaintiff, and his damages assessed at $1. Plaintiff moved for a new trial, which being overruled, he appealed to the St. Louis court of appeals, where the judgment of the circuit court was affirmed. Thereupon plaintiff appealed to this court.

Among the instructions given on behalf of the plaintiff, is the following: "If the jury find for plaintiff, he will be entitled to recover such damages as the jury believe from the evidence he suffered by reason of the prosecution, and in addition thereto the jury may add such further amount, by way of smart money, as they think from all the circumstances the defendant should be punished with."

The principal error complained of by the plaintiff, the appellant, is, that the jury, in assessing his damages at $1, 1. MALICIOUS PROSE- disregarded this instruction, inasmuch as CUTION: damages. his evidence showed that he had expended $101 as attorney's fees in securing his release from the prosecution. It may be conceded that under the law as now generally recognized, in the action for malicious prosecution, the jury may award the plaintiff the damages directly sustained by him in the defense of the original suit or prosecution against him, including reasonable counsel fees. *Farlie v. Danks*, 30 Eng. L. & Eq. 115; *Closson v. Staples*, 42 Vt. 209; *Sheldon v. Carpenter*, 4 Comst. 579. But is the rule imperative? Has he such a right to this re-imbursement for counsel fees as to command it of the jury?

In *Bradlaugh v. Edwards*, 11 C. B. (N. S.) 377, Chief Justice Erle discusses this precise question, and his reason-

ing and conclusion meet my understanding of the law. The evidence in that case showed that plaintiff had expended in his defense over seven pounds, while the jury returned a verdict of one farthing. "Where (says the court) a party has been illegally imprisoned and been put to expense in procuring his discharge, he may very well urge that before the jury as an aggravation, but he has no right to demand to be re-imbursed *ex debito justitiae.* It is in the discretion of the jury to give him such damages as they may consider a sufficient compensation for the wrong the party has sustained, irrespective of any expense he may, perhaps needlessly, have incurred in his defense." The learned judge then observes that in view of the questionable morality of the plaintiff's conduct the jury within their discretion concluded "that the injury he had sustained by the short imprisonment he endured was one for which a large sum ought not to be paid, but, on the contrary, was, in the result, a substantial benefit to the plaintiff, and, therefore, amply compensated by the small sum they have awarded him." Williams, J., page 385, added that the plaintiff " had no more right to receive those expenses than a plaintiff in an action for assault has to recover the amount of the surgeon's bill for dressing his wounds. It is a matter which the jury may take into their consideration, but that is all."

So in *Colyer v. Huff,* 3 Bibb 34, action for slander, damages awarded one cent, the court say : " It is an invariable rule never to grant a new trial for the smallness of the damages, in an action founded upon tort and sounding merely in damages." After observing that the rule as a matter of course does not apply to actions *ex contractu,* nor where the verdict is the result of fraud or misconduct, wherein the new trial is granted, " on account of the extrinsic cause which produced the smallness of the damages, and not account of the smallness of the damages alone," the court pertinently to the argument of plaintiff's counsel in his brief, in the present case, say that " the argument

which admits the rule but tends to prove its inexpediency or injustice cannot be entitled to weight. We have no authority to alter the established rules of law. We sit here to declare what the law is, and not what it ought to be."

In *Mostin v. Coles*, 7 Hurl. & Nor 872, action for injury to goods, the uncontradicted evidence was that the goods lost amounted to 2 *l.* The jury returned a verdict for nominal damages. *Held,* no ground for new trial. The court in this case put an apt illustration; the action for injury sustained by a railroad accident where the defense interposed is contributory negligence: "The jury being divided in opinion upon the question, and being unable to agree upon it, might nevertheless succeed in arriving at a unanimous verdict for nominal damages. It seems to me possible to reconcile this verdict as the result of an opinion that although the misconduct of the plaintiff had not occasioned the injury, it had in some way contributed to it." So in this case, there was evidence before the jury from which they might have reasonably inferred that the plaintiff's conduct was not free from fault and reprehension; and while out of leniency they were unwilling to turn him out of court without a salve, they did not feel that the defendant deserved to be mulcted further than $1 and the costs. See *Richards v. Ruse*, 24 Eng. L. & Eq. 407.

In the case of *Randle v. P. R. R. Co.*, 65 Mo. 334, HOUGH, J., recognizing no doubt the rule above announced, 2. THIS COURT WILL says: "The verdict of the jury is for NOT REVERSE A JUDGMENT. many purposes undoubtedly conclusive." Furthermore, no rule of law is more firmly grounded in the practice of this State, than that the jury is the sole judge of the weight of evidence and the credibility of the witnesses. Upon this part of their province no judge is permitted to go. As early as the 4th Mo., in *Bryan v. Wear*, p. 106, where plaintiff in ejectment had offered uncontradicted evidence of his title, this court held it error to instruct that plaintiff had shown a good title, because it in effect told the jury "they must believe the evidence."

In *McAfee v. Ryan*, 11 Mo. 365, it was held that although there may be nothing in the record to impeach the veracity of a witness who deposes to the fact, and the verdict is directly against his evidence, the verdict would not be disturbed. " There may have been something in his conduct before the jury, or in the relation he ' bore to the parties, which cannot appear to us." ' In *Steamboat City of Memphis v. Matthews*, 28 Mo. 248, Napton, J., expressed this rule forcibly : "All the testimony was on one side, but the jury disregarded it, and the circuit court, who heard the witnesses, sanctioned the verdict of the jury. We must infer from this that the circuit court was satisfied with the course of the jury. The credit due to witnesses is a matter peculiarly for a jury." In *Bradford v. Rudolph*, 45 Mo. 426, Wagner, J., said: " The whole merits of the question turned upon issues of fact, and the jury were the proper judges of the evidence, and their verdict is conclusive upon us."

The plaintiff called no one to corroborate his statement as to whether he in fact paid counsel fees. Where was the counsel to whom he paid the money ? This inquiry might well have arisen in the minds of the jury. The witness' moral character was assailed before the jury. They perhaps, wholly disregarded him in this matter. How could the judge from the bench coerce their opinion or judgment? I have extended this discussion. at length in deference to the pertenacity and ability with which the learned counsel for plaintiff has pressed this question for review.

Appellant's next contention is, that the circuit court erred in not permitting him to prove the conduct or actions of the defendant at the trial when plaintiff was being prosecuted. It is important to ascertain what the exact fact is as a basis for this objection. When the witness Reid was on the stand, plaintiff asked him this question : " State Mr. Chambers' manner on that occasion ; was it vindictive or otherwise?" This question was clearly objectionable. It was suggestive of the answer

3. LEADING QUESTIONS.

desired, and assumed for the determination or opinion of the witness, a matter the jury should draw from the facts. The next question was : "Are you able to state what was said and done at that trial? If so, go on and give it to the jury." The bill of exceptions shows that the trial in view was one of Gregory against Chambers. What that case was is not disclosed. What connection it had with the prosecution in question is not apparent. And why the court should sit and hear rehearsed on the pending issue, " what was said and done at that trial," passes reason and patience. If the object was to elicit the conduct of the defendant Chambers at the alleged trial of Gregory, plaintiff cannot complain, for further on the witness Reid was asked : "After he gave his testimony he did what ?" Ans. " He took his seat by me, and suggested points all the way through the trial."

It is also assigned for error that the trial court improperly admitted evidence impeaching plaintiff's character. 4. MALICIOUS PROS- Whatever might be said *pro* or *con*, were ECUTION: evidence of character. this question *res integra*, this court in *Miller v. Brown*, 3 Mo. 127, has decided it against the appellant. It does not appear to have since been before this court, and presumptively for the reason that the profession have deemed it settled in this State. It is well supported both by reason and authority. The gravamen of the action is not alone pecuniary loss and wounded feelings, but injury to reputation. And why the general character for honesty, etc., is not as much involved as in slander, is difficult to perceive. Mr. Greenleaf, (§ 55, Ev.,) while admitting the rule that wherever the general character of the party is involved it may be assailed, as in case of slander, yet says it is not permissible " in trespass on the case for malicious prosecution." The single authority cited by him in support of the text is *Gregory v. Thomas*, 2 Bibb 282. With great respect I submit that the case is no support for the text. The defendant in that case interposed the special defense of probable cause, and what the court decides is, that under

such a plea setting out specifically the grounds of suspicion on which the prosecution was instituted, "the evidence, therefore, to support them must be special, and confined to the particular facts put in issue." The trial court had, under the special plea, admitted evidence of other particular charges of thefts, etc., imputed to the plaintiff. That was held to be error. But the court expressly say: "We think the court ought not to have permitted the inquiry to have extended further than to the plaintiff's general character." It is, therefore, an express authority for impeaching the general character.

In *Rodriguez v. Tadmire*, 2 Esp. 721, Lord Kenyon held that proof of plaintiff's bad character might be given; "but particular instances could not be called for." And it is apparent that the failure of some text-writers to observe the distinction between making proof of general bad character and "particular instances," has led them into the blunder of saying that Lord Kenyon's opinion, *supra*, was overruled in *Newsam v. Carr*, 2 Stark. 69. The point decided in this case arose on this state of facts: "In the course of the trial, one of the witnesses was asked, whether he had not searched the plaintiff's house, upon a former occasion, and whether he was not a person of suspicious character." Wood, B., answered that in slander such evidence was admissible to mitigate the damages, "and not to bar the action, and in this case such evidence would afford no proof of probable cause to justify the defendant." This is the whole of that case. The question asked was as to a particular instance and as to the witness' opinion if plaintiff was not a "suspicious character." It did not present the question of general bad character, and all the bench decided was, that it was no proof of probable cause to justify defendant.

I deduce from the great weight of authority the rule to be in this action that while the plaintiff's bad reputation may not generally be put in evidence as proof of probable cause, it may always be received in mitigation of damages.

Wharton Ev., 1 vol., § 54; *Bacon v. Towne*, 4 Cush. 217; *Fitzgibbon v. Brown*, 43 Me. 170; *Martin v. Hardesty*, 27 Ala. 458; *Bostick v. Rutherford*, 4 Hawks (N. C.) 83; *Israel v. Brooks*, 23 Ill. 575. Some of the cases cited fully sustain the suggestion of the court in *Miller v. Brown, supra*, that proof of bad character may be admitted to aid in making out the defense of probable cause.

It is suggested by appellant that the instruction accorded to the defendant, wherein it was declared that the jury " are at liberty to determine from all the facts in evidence, whether plaintiff has shown the existence of both malice and want of probable cause," is in conflict with the one given for plaintiff in which the jury are told that if they " believe from the evidence that the prosecution was without probable cause, they may infer therefrom that it was malicious." In view of the fact that the jury found the issue for the plaintiff, the error, if one at all, produced no injury.

The judgment of the circuit court and of the court of appeals must, therefore, be affirmed. All concur.