DANIEL WHITE, Respondent, v. JACOB STONER, Appellant.

Kansas City Court of Appeals, July 6, 1885.

1. WITNESSES—OPINION AS TO DAMAGES INCOMPETENT.—It is not competent for a witness to state the amount of *damages* a party has suffered. The *witness* should be confined to the facts ; and it is the business of the *jury* to assess the damages. *Belch, executor, v. Mo. Pac. Ry. Co.*, decided at this term. But there are *exceptions* to this rule, *notably*, the opinion of experts in science or trade, and opinion as to handwriting, and where the subject of the inquiry is so indefinite and general in its nature as not to be susceptible of direct proof. *Eyerman v. Sheehan*, 52 Mo. 221.

2. SHADE TREES—MEASURE OF DAMAGES.—Trees in special situations are not only a great ornament, but are sources of health and comfort to the owner. The market value of the lumber would be poor recompense, and the measure of damages, in such a case, is "not necessarily and exclusively the value of the wood and timber removed, but the solid and permanent injury to the inheritance." *Hardee v. Hardee*, 26 Barb. 409 ; *Foote v. Merrill*, 54 N. 4490 ; *Chipman v. Hibbard*, 6 Cal. 162.

APPEAL from Barton Circuit Court, HON. CHAS. G. BURTON, J.

*Reversed and remanded.*

Statement of case by the court.

In September, 1881, plaintiff bought of defendant a farm in Barton county, Missouri; but, as possession was not to be delivered until March following, a written contract or lease was entered into, by which plaintiff leased the farm back to defendant until March 1, 1882. In said lease defendant agreed to keep the premises in good repair, ordinary wear and tear excepted; to not permit his stock to run in the fields, except when the ground was dry or frozen, so as not to injure the same; and that he would not cut or destroy any timber or trees on the premises.

Possession was delivered to plaintiff in March, 1882, as agreed; and at the April term, 1882, of the Barton circuit court, he brought this suit for damages for injuries to the farm while in defendant's possession, alleging that defendant had cut down trees, torn down fencing, allowed cattle to run in the fields when not dry or frozen, and had otherwise injured the houses and buildings and premises, and praying judgment for one thousand dollars.

At the same term defendant answered, admitting the lease, but denying any breach thereof on his part, or any injury whatever to the place done by him while tenant; and also pleaded a counter-claim of $19.43.

At the same term, plaintiff filed general denial for replication.

At the October term, 1882, of said court, the case was tried before Hon. B. G. Thurman, as special judge, by agreement of the parties, and was submitted to a jury, who returned a verdict for plaintiff in the sum of one hundred and forty-six dollars, and judgment was accordingly rendered, from which the defendant perfected his appeal in due time.

The errors excepted to, and relied upon, by defendant are in the action of the court in allowing the testimony of plaintiff's witnesses, S. R. Crouse, Lewis McChesney,

W. H. Kent, and James Mitchell, to go to the jury over the objections of the defendant.

The following is the testimony of these four witnesses in full, as it appears in the bill of exceptions :

Testimony of S. R. Crouse:

"I had not known the Stoner farm for about eighteen months prior to the trade in September, 1881. At Mr. White's request, I went over the place in March, 1882, to notice the condition of the place. I have farmed nearly all my life, but am not farming now. I live in the town of Lamar. I saw the stable, the house, the grove of trees, and the hedges. I noticed some trees had been cut in the grove, and a space of rail fence missing from southeast corner."

Question by plaintiff's counsel.—"Supposing. that you take the Stoner farm on the 10th of September, 1881, with a fence on the west side eighty rods in length, with posts about two rods apart, with three barbed wires ; take the improved land to be sixty-five or seventy acres, in good condition ; taking the yard and premises around the house in good condition, and grass growing ; an orchard of seventy-five or more trees in good condition ; a rail crib eight by ten by sixteen feet, nailed up with slats on sides, in good condition, covered with boards ; a stable which you saw standing on the place, in good condition ; taking a lot about twenty rods each way, in northeast corner of farm, fenced with posts and wire ; the house that you saw, in good repair; the grove of shade and ornamental trees, which you saw, still standing ; the hedges you saw around the place, in good condition ; length of fence in southeast corner, built of rails, in good condition and repair ; the wire stretched across the north side of the creek, dividing the two fields ; the space of fence which you saw missing on the north side, in good condition ; now, taking into consideration that such was the condition of the place on September 10, 1881, what would you consider the damage to the place in the condition in which you saw it in March, 1882?"

The above question was objected to by defendant's

counsel, because it called for the opinion of the witness, and not for facts; because it was not a proper hypothetical question; because it was not a proper case for a hypothetical question; because it was not a proper case for expert testimony; because the witness was not qualified to testify as an expert.

The court overruled defendant's objection, and permitted the witness to answer; to which ruling and order of the court defendant then and there excepted at the time.

Witness answered: "I would estimate the damage at about two hundred and thirty to two hundred and forty dollars."

*Cross-examination.*—"I am not on good terms with defendant Stoner. If things were moved from one part of farm to another, that would reduce my estimate of damages."

Testimony of Lewis McChesney:

"I have resided on the Stoner, or White, place since March, 1882. I farmed the place for White. I saw the place for the first time in March, 1882. Have been farming nearly all my life. I heard the testimony of Daniel White, the plaintiff, regarding the condition of the place at the time he bought, in September, 1881. As a farmer, I have knowledge of the value of improvements on a farm."

Question by plaintiff's attorney.—"Taking Mr. White's testimony to be true as to the condition of the premises at that time, September, 1881, and the condition of them in March, 1882, when you first saw them, you may state to the jury what, in your opinion, would be the reasonable amount of damages to the place by reason of the difference of the condition, if any?"

Question objected to by defendant's counsel, for the reason that it called for the opinion of the witness, and not for facts; because it was not a proper case for expert testimony; because it was not a proper hypothetical question; because the witness was not qualified to testify as an expert.

Objection overruled by the court, and witness per-

mitted to answer; to which ruling and order of the court defendant then and there excepted at the time.

Witness answered :—" It is my opinion the damages would be two hundred and twenty-five to two hundred and thirty dollars. I plowed the land the next year." Witness described condition of land to the jury, and the effect upon the crops.

*Cross-examination.*—"My experience as a farmer, and as to the effects of tramping land, has been in Illinois and Minnesota. It was tolerably dry when we commenced plowing in the spring, on the Stoner place. Do not know whether farmers in that neighborhood generally let their stock run in the stalk fields or not."

Testimony of W. H. Kent :

"I reside one and a fourth miles from the Stoner place. I was raised on a farm, and am a farmer. Saw cattle on the place in winter of 1881–82. Ground was generally wet and muddy. I know what effect it has on land to allow stock to run on improved land when same is soft and muddy."

Question by plaintiff's attorney.—"What general effect does it have?"

Objected to by defendant's counsel, because it called for the opinion of the witness, and not for facts; because it was not a proper question in this case; because it was not a proper case for expert testimony; because witness was not qualified to testify as an expert.

Objection overruled by the court, and witness permitted to answer; to which ruling and order of the court defendant then and there at the time excepted.

Witness answered :—"It affects it, when tramped in winter when muddy, so as to cause it to turn up cloddy and hard. It makes it harder to cultivate, and decreases the yield from one-third to one-half the following season. I heard the testimony of the plaintiff, Mr. White, about the condition of the grove. I saw the grove about six months before the sale to White."

Question by plaintiff's counsel.—"Taking White's testimony to be true regarding the number and kind of

trees cut from the grove, what would you consider the damage to the grove to be?"

Objected to by defendant's counsel, for the reason that it called for the opinion of the witness, and not for facts; because it was an improper case for expert testimony; because witness was not qualified to testify as an expert.

Objection overruled by the court, and witness permitted to answer; to which ruling and order of the court defendant then and there excepted at the time.

Answer.—"I would consider the damage to be about forty dollars."

Testimony of James Mitchell:

"I live two and a half miles from Stoner place. is a creek farm. The grove on the place is valuable for poles, wood, shade, and ornament. I know what effect it has on ground to tramp it."

Question by plaintiff's attorney.—"What effect does it have?"

Objected to by defendant, for the reason that it called for the opinion of the witness, and not for facts; because it is not a proper case for expert testimony; because the witness was not qualified to testify as an expert.

Objection overruled by the court, and witness permitted to answer; to which ruling and order of the court defendant then and there excepted at the time.

Answer.—"It affects the crop the coming season, and has a bad effect."

Besides the testimony of the four witnesses above named, there was testimony tending to prove damages.

On behalf of defendant, there was testimony tending to prove no damages.

There were no exceptions to the instructions given by the court.

BULER & TIMMONDS, for the appellant.

I. The general rule of evidence is that a witness must depose to such facts only as are within his own knowledge. 1 Greenl. Evid., sect. 440; *Eyerman v. Sheehan*, 52 Mo. 221.

II.   The *opinion* of a witness may be given in evidence in two cases: (1) When the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance. (2) When a witness has had the means of personal observation, and the facts and circumstances upon which he bases his conclusions are incapable of being detailed so intelligently as to enable any one but the observer himself to form an intelligent conclusion from them, he may add his opinion. 1 Greenl. Evid., sect. 440; Taylor on Evid., Vol. II, sect. 1038; *Garick v. R. R.*, 49 Mo. 274; *Eyerman v. Sheehan*, 52 Mo. 221; *Greenwell v. Crow*, 73 Mo. 638.   There was nothing at issue in this case which would require, or even admit of, expert testimony.

III.   Nor was the opinion of the four witnesses, Crouse, Kent, and others, admissible on any other ground than that of experts.   Not one of them testified of his own knowledge of the condition of the farm at the time the lease was made.

IV.   Even if expert testimony could be held admissible, the hypothetical questions put by plaintiff's counsel were improper, for the reason that they assumed White's testimony to be true, and that all damages were caused by defendant himself, regardless of storm, flood, or unavoidable accident.   The jury could scarcely have arrived at the verdict they did, except for the testimony of the so-called experts.   The *case should be reversed.*

ROBINSON & HARKLESS, for the respondent.

I.   All that is required for a witness to give his opinion upon a supposed state of facts is clearly expressed by all authorities to be, that he be "experienced in the particular art or profession."   If he be, he may testify; if not, he can not.   *That is all there is of it.* 1 Greenl. Evid. (12th Ed.) 487; Abbott's Trial Evid., p. 368, sect. 22.

II.   The questions put were such as fall within the foregoing rule.   The witnesses were men who farmed and had the constant care of keeping up such improve-

ments, and were experts in these matters. *Cantling v. R. R.*, 54 Mo. 385 ; *Daily v. Grimes*, 27 Md. 440 ; 2 Best. Evid. p. 957 (Am. Ed.).

III. The witnesses were more competent to pass on the value of the property, or of damages to it, than the jury. The jury may know, and may not know, anything about the value of improvements on farms. The jury may be all farmers or all dudes. Such examination is competent. *Tingley v. Cowgill*, 48 Mo. 291 ; *Tate v. R. R.*, 64 Mo. 149 ; *State v. Johnson*, 1 Mo. App. 219 ; *Hand v. Brookline*, 126 Mass. 324, authorities in paragraphs one and two.

IV. The doctrine of expert testimony is as aged as the hills. 28 Ass. pl. 5 ; Plowd. 125.

V. All of these witnesses had seen the place after it had been devastated by defendant, and knew of its *then* condition ; the questions were only hypothetical as to condition when defendant took it, and are competent. *Nellis v. McCarn*, 35 Barb. 115 ; *R. R. v. Bell*, 5 Ohio St. 568 ; *Datzell v. Davenport*, 12 Iowa 437 ; *Wetherbee v. Bennett*, 2 Allen (Mass.) 428.

VI. The admission of the evidence rests largely in the discretion of the court, and its admission or rejection will not secure a reversal, except where evidence is clear and strong. *Oil Co. v. Gibson*, 63 Pa. St. 163 ; *Howard v. Providence*, 6 R. I. 514.

Opinion by ELLISON, J.

The objections should have been sustained to the question asked of the witnesses Crouse and McChesney, and the last question asked Kent.

There are matters embraced in the question put to the witness Crouse, about which he could properly give his opinion as to the value, and matters about which his opinion as to value would be improper ; but there is nothing in the questions propounded to either of the witnesses authorizing a statement as to what the *damages* would be.

There are also matters propounded, in which differ-

ent elements of damages enter, and different rules for the ascertainment of that damage exist.

It was decided by this court, at present term, in the case of *Belch, Executor, v. The Missouri Pacific Railway Company*, that it was not competent for a witness to state the amount of damages a party has suffered. The witness should be confined to the facts. As is well said in the case of *Fish v. Dodge* (4 Denio 311), "it was the business of the witness to state facts, and the jury to assess the damages." "The opinions of witnesses as to damage or loss are not competent evidence, even in cases where the damages claimed are a proper subject of recovery. The facts, and all the facts, going to show what the damages would be, should be given in evidence; and the jury must then draw their conclusion from the testimony of the witnesses as to the amount of the damage." *Giles v. O'Toole*, 4 Barbour 261. So in the case of *Moorehouse v. Mathews* (2 Comstock 514), the following question was held improper: "How much, in your opinion, was the *damage* sustained by the plaintiff in consequence of feeding the cattle upon the poor hay, instead of that agreed upon?"

The court says "the general rule upon the subject is that witnesses must be confined to the communication of *facts*, and not opinions or conclusions which they may have formed from the facts, whether known to themselves or derived from the testimony of others. It is the special duty of the jury to draw *conclusions*, and not of the witness." 1 Phil. Ev. 290. The exceptions to the general rule are confined to questions of science, trade, and a few others of the same nature, but can not be extended to a case like the one under discussion.

It is allowable for a witness who deals in, or is acquainted with, the value of cattle or horses, to testify as to the value of such animals, because he then speaks of *facts*, as derived from the market price of such property. In such case, his testimony would not be opinion, it would be knowledge.

The court says, in the case of *Norman v. Wells* (17 Wendell 136–163), that "no case was cited by the coun-

sel for the plaintiff where evidence of opinion as to the amount of damages sustained has ever been sanctioned as legal. The amount of indemnity, where it is not capable of being reached by computation, is always a question for the jury. If there be any rule without exception, it is this; and I have been unable to find any instance where the opinion of witnesses has been received." Though it is the rule that an opinion of a witness shall not be received, as to damage or otherwise, there are familiar exceptions—the opinion of experts in science or trade; opinions as to handwriting, are notable exceptions, though not all. Opinions as to value of merchandise or property, such as of the value of horses or cattle, are not by some courts deemed an exception, for the reason that it is not believed such evidence falls within the rule. For, as is said in the case of *Moorehouse v. Mathews, supra,* the witness is speaking of facts, as derived from the market price. Among the exceptions would be that class of cases, "when the subject of the inquiry is so indefinite and general in its nature as not to be susceptible of direct proof, the opinions of witnesses are admissible. If the witness has not the means of personal observation, and the facts and circumstances upon which he bases this conclusion are incapable of being detailed so intelligibly as to enable any one but the observer himself to form an intelligent conclusion from them, he may *add* his opinion." *Eyerman v. Sheehan et al.,* 52 Mo. 221.

Opinions as to value of any species of property, if such may be called opinions, are admissible from witnesses acquainted with values of such property. But it will be observed that in this case it is not value which is asked for, but *damage.*

Damage is a word of quite broad signification in the minds of many who are not familiar with the rules of law, confining its compensatory character to its proximate cause. A witness stating what the damage is in a given case, is in too broad a field of individual conjecture for the safety of justice under the forms of law.

We will not be understood as saying there are no

instances in which a witness may not give his opinion as to the damage done. An expert might be competent to testify, in the absence of any other satisfactory mode of proof, as to the amount of damage; but there is nothing in the case before us to bring it under such necessity.

All that portion of the evidence relating to the fencing, condition of the house, crib, etc., were matters about which witnesses should state *facts*, and let the jury, under *direction* of the court, estimate the damage. The value of the fencing, the cost of material, the amount needed, the price of labor, etc., might well be stated by witnesses acquainted with the subject matter. If the fence was totally destroyed, the cost of a new one of similar character, allowing for the difference between the new and the old, would be the measure of damages. If the fence was injured, the expense of repairing it so as to place it in as good condition as before the injury, would cover the damages. So the measure of damage done to the house would be the cost of repairing the injury done. If a "window-pane is broken out," the cost of another of the same size and quality, and the cost of putting it in, would be the measure of damages. These are propositions so plain, equitable, and just as to be self-evident. There could be injuries to a building where, perhaps, the opinion of a witness, competent in that behalf, could be properly asked as to the amount of damage; where, from the nature of the injury, it would be irreparable, and no complete or substantial restoration to its former condition could be had. In such case, a skilled builder or architect could properly give his opinion as to the amount of damage; but, even then, he should state the facts, and all the facts, upon which he bases his opinion.

The injury to the orchard and the shade and ornamental trees calls for a measure of damages altogether different from that of the cutting or destruction of ordinary timber. In speaking of the subject of destruction of fruit trees, Johnson, J., in the case of *Whitbeck v. Railway Company* (36 Barbour 644), says: "The true rule I conceive to be this, that if the thing

destroyed, although it is a part of the realty, has a value which can be accurately measured and ascertained without reference to the value of the soil in which it stands, or out of which it grows, the recovery must be for the value of the thing thus destroyed, and not for the difference in value of the land before and after such destruction. There is no intrinsic difficulty, as I conceive, in estimating the value of a fruit tree growing upon land, although it has strictly no market or commercial value, as a tree, independent of the land which sustains it. * * * But it does differ from trees which are usually converted into timber or firewood, and which are frequently sold as they stand, for that purpose, or nursery trees which are grown for market. The difference is this : in the one case the value consists chiefly in the thing itself, as a convertible and marketable commodity, while in the other the value consists chiefly in the quality and quantity of its average annual products, and is capable of being leased, as much as a field or a dwelling.'' And in this respect it was competent for the witness to give his opinion as to the value of the trees, as was held in the case, further on in the opinion. This we deem a fair and just way of fixing the damage in this case.

The cutting of shade or ornamental trees may be an injury of far more consequence than the mere marketable value of the timber. Trees in special situations or locations are not only a great ornament, but are sources of health and comfort to the owner. The market value of the lumber would be poor recompense indeed for the loss of a majestic elm that had shaded and sheltered the homestead for generations. The measure of damages in such a case is ''not necessarily and exclusively the value of the wood and timber removed, but the solid and permanent injury to the inheritance.'' *Harder v. Harder*, 26 Barbour 409. In speaking of the same subject, the court, in the case of *Van Deusen v. Young* (29 Barbour 9), says : ''It only remains to consider the objections to testimony. They are all substantially similar, to-wit, that evidence of the comparative value of the premises, with or without the wood and timber, was improper;

first, as furnishing no appropriate criterion of damage; and, second, as founded on merely speculative opinions of the witnesses. But I think it was the proper test of an injury to the inheritance. * * * Surely the damages would not be in all cases accurately measured by the market value of the wood or timber when cut. The trees might be a highly valuable appendage to the farm, for the purposes of shade or ornament; there might be a very scanty supply for a farm of that size; or for other reasons they might have a special value, as connected with the farm, altogether independent of, and superior to, their intrinsic value for purposes of building or fuel. As well might you remove the columns which supported the roof or some part of the superstructure of a splendid mansion, and limit the owner in damages to the value of these columns as timber or cord wood, as to adopt the parallel rule in this case."

The same rule is stated in *Foote v. Merrill*, 54 N. H. 490; *Chipman v. Hibbard*, 6 Cal. 162; *Ensley v. Nashville*, 2 Baxter 144; *Wallace v. Goodall*, 18 N. H. 439–56.

Our conclusion, then, is that in none of the particulars of this case was it competent or proper for a witness to give his opinion as to the damage done. That witnesses acquainted with the subject matter concerning which they are being interrogated may state the difference in value of the farm with the shade and ornamental trees and hedge fence as they were when the farm was leased to the defendant, and when he turned it back to plaintiff. That the witness Kent, having stated he was acquainted with the effect of tramping land by stock in wet, soft weather, and that he was an experienced farmer, was competent to answer the question put to him, and that his answer was proper, and so of the witness Mitchell.

We believe this testimony comes within the exception to the rule, and may properly be said to be expert testimony. Greenleaf on Evidence, Vol. I, sect. 440. It is evident that those who have had opportunities of studying the effect of such uses, and experiencing its results, could give more definite and intelligible evidence in

regard thereto than those who had not such opportunities or experience. If tramping, under given conditions, has a known effect upon the producing quality of the land, the difference in the rental value would follow, and would be easily ascertained.

That a witness competent in that respect, that is, with sufficient experience, information, and knowledge, could properly be asked the value of the fruit trees destroyed, or the extent of the injury to those injured, giving the facts upon which he bases his statement.

The judgment is reversed, and the cause remanded. All concur.