JAMES A. KENNEDY, Respondent, v. HIRAM N. HOLLA-DAY, Appellant.

St. Louis Court of Appeals, April 19, 1887.

1. MALICIOUS PROSECUTION — PRESUMPTIONS — REPUTATION.—In an action of malicious prosecution, the reputation of the plaintiff is presumed to be good.

2. ——— EVIDENCE.—In such an action, it is error to admit evidence in chief of the good reputation of the plaintiff, or to permit him to testify to his own integrity.

3. ——— HEARSAY—INCOMPETENT.—In such an action, entries in tax books are inadmissible in favor of the person offering them, to prove his financial condition in life.

4. ——— MALICE.—The defendant's conduct before the grand jury, and how and why he gave his testimony there, may be shown in disproof of malice.

5. ——— DECLARATIONS — ANIMUS. — The defendant's declarations, even though they are made after the institution of the prosecution, may be given in evidence to show the animus of the prosecution.

6. ——— DAMAGES.—It is incompetent to prove damages by the plaintiff's opinion as to their extent, but facts upon which the jury can base an opinion must be shown.

7. ——— TERMINATION OF PROSECUTION.—The entry of a *nolle prosequi*, without a subsequent renewal of the prosecution, is sufficient evidence of its termination to warrant the bringing of the action for malicious prosecution.

8. —— EXPERT ACCOUNTANTS.—It is error to exclude expert accountants from testifying as to the state of the accounts at the °time of the prosecution, as shown by the books of account properly in evidence.

9. —— PROBABLE CAUSE.—The defendant's honest belief in the truth of the charges made, does not, without more, constitute probable cause.

10. —— INSTRUCTIONS—CASE DETERMINED. — The defendant was entitled to an instruction, that if the jury believed the evidence of his witnesses, his conduct was compatible with good faith.

11. PRACTICE—EXCEPTIONS—MISCONDUCT OF COUNSEL.—The question of the misconduct of counsel can not be raised by affidavits filed after the close of the trial, but must be raised by exceptions.

APPEAL from the Madison County Circuit Court, JAMES D. FOX, Judge.

*Reversed and remanded.*

CARTER & WEBER, CHAPMAN, HOLLIDAY, EMERSON, and CAHOON & CAHOON, for the appellant: The plaintiff's character was not in issue, not having been attacked. *The State v. Thomas,* 78 Mo. 343; *The State v. Cooper,* 71 Mo. 436. The evidence of statements of the defendant, tending to show his animus was too uncertain as to time. *Connel v. Bertelsman,* 61 Mo. 118; *Ringo v. Richardson,* 53 Mo. 385; *Johnson v. Quarles,* 46 Mo. 423. Evidence by the plaintiff that he was not guilty of the offence of which he was charged was incompetent. *Brennan v. Tracy,* 2 Mo. App. 540; *Rainey v. Vallandingham,* 9 Mo. 817; *Hickman v. Griffin,* 6 Mo. 41. The issue in malicious prosecution, is not the guilt or innocence of the plaintiff. *Sharpe v. Johnston,* 59 Mo. 574; *Van Sickles v. Brown,* 68 Mo. 634. The opinion of the defendant as to the extent of his damage is not evidence. *Winkler v. Railroad,* 18 Mo. App. 109; *White v. Stoner,* 18 Mo. App. 540; *Belch v. Railroad,* 18 Mo. App. 80. To support an ordinary action of malicious prosecution, it must appear affirmatively, first, that the prosecution was instituted wilfully, falsely,

and maliciously, and second, without probable cause, and both must concur, otherwise there can be no recovery. *Sappington v. Watson*, 50 Mo. 83; *Merke v. Ottensmeyer*, 50 Mo. 46; *Kelton v. Bevins*, 5 Am. Dec. 670; *Bell v. Graham*, 9 Am. Dec. 687; *Turner v. Walker*, 22 Am. Dec. 329; *Leidig v. Rawson*, 29 Am. Dec. 354; *Williams v. Hunter*, 14 Am. Dec. 597; *French v. Smith*, 24 Am. Dec. 616; *Mowery v. Miller*, 24 Am. Dec. 680; *Adams v. Lisher*, 25 Am. Dec. 102. And malice may be inferred from the want of probable cause, but probable cause can not be inferred from proof of malice. *Casperson v. Sproule*, 39 Mo. 39; *Hickman v. Griffin*, 6 Mo. 40; *Brant v. Higgins*, 10 Mo. 728; *Sharpe v. Johnston*, 59 Mo. 557; *Holliday v. Sterling*, 62 Mo. 321. This defence of advice of counsel is admissible under the general issue. *Burris v. North*, 64 Mo. 426; *Sparling v. Conway*, 75 Mo. 511; s. c., 6 Mo. App. 285; *Northrup v. Ins. Co.*, 47 Mo. 442. The defendant must show that he, in good faith, communicated to such counsel all the facts bearing upon the guilt or innocence of the accused, which he knew; or, by reasonable diligence, could have ascertained; and he must not omit to state a fact known to him, although he honestly supposed it was not material. *Hill v. Palm*, 38 Mo. 21; *Williams v. Van Meter*, 8 Mo. 343; *Sharpe v. Johnston*, 76 Mo. 660; s. c., 59 Mo. 557; *Stone v. Swift*, 16 Am. Dec. 349; *Turner v. Walker*, 22 Am. Dec. 327. If there was probable cause, no action lies, however maliciously prosecuted. Green and Meyer Mo. Prac., sect. 749; *Sharpe v. Johnston*, 59 Mo. 557; *Burris v. North*, 64 Mo. 426; *Ulmer v. Leland*, 10 Am. Dec. 48; *Adams v. Lisher*, 25 Am. Dec. 102. The original prosecution must have terminated, that is ended, in plaintiff's favor. Green and Meyer Mo. Prac., sects. 751 and 752; 2 Bouv. Law Dict. 98; 1 Hill on Torts, 441; *Moore v. Sanborn*, 42 Mo. 494; *Mooney v. Kent*, 19 Mo. 555; Whittlesey's Mo. Prac., sect. 138, p. 161; *Spring v. Besore*, 12 B. Mon. 551; *Wood v. Laycock*, 1 Met (Ky.) 192; *Winn v. Peckham*,

42 Wis. 493; *Leever v. Hammill*, 57 Ind. 423; *Scott v. Shelor*, 28 Gratt. 891; *Hamilburg v. Shepard*, 119 Mass. 30; *Gorrell v. Snow*, 31 Ind. 215; *Brown v. Randall*, 36 Conn. 56. The entering of a *nolle prosequi* is not such a termination of the prosecution as is requisite for the bringing of the action of malicious prosecution. 2 Greenl. Evid. 452; 2 Starkie Evid. 490; 2 Selwyn Nisi Prius, 807, 811, and 812; Green and Meyer Mo. Prac. sect. 753, p. 292; Blackstone Com. Bk. 3, p. 126 and note; 1 Hill on Torts, sect. 27, pp. 454, 455; *Mooney v. Kent*, 19 Mo. 55; *Graves v. Dawson*, 130 Mass. 80, 81; s. c., 133 Mass. 420; *Parker v. Huntington and Farley*, 2 Gray, 124; *Coupal v. Ward*, 106 Mass. 290; *Cardival v. Smith*, 108 Mass. 158; *Parkey v. Farley*, 10 Cushing (Mass.) 279; *Garing v. Frazier*, (Maine) 19 Cent. Law Jour. 457; *Smith v. Shackleford*, 1 Natt. and Mc. 36; *Bacon v. Towne*, 4 Cush. 217; *Sayless v. Briggs*, 4 Met. 421; *Brown v. Lakeman*, 12 Cushing (Mass.) 482; *Kirkpatrick v. Kirkpatrick*, 39 Pa. St. 288; *Garing v. Fraser*, 70 Maine; s. c., 23 Am. Law Reg. 805, 806; 8 U. S. Digest, 942; 3 U. S. Digest, 436; *Goddard v. Smith*, 6 Mod. 261; 21 Wend. 281; 12 Cow. 219; 18 How. Pr. 529; 9 Abb. Pr. 242; *Goddard v. Smith*, 1 Salk. 21. The expert accountants should have been permitted to testify. 1 Greenl. Evid., sect. 93; *Roberts v. Doxon*, Peake's Cas. 83; *Ins. Co. v. Hanlon*, S. C. Pa. Leg. Int. 1874, 372.

William N. Nalle, associated with G. A. Standard and J. Perry Johnson, for the respondent: Good character is a circumstance going to establish want of probable cause, and, as a defence to the charge of felony, "very persuasive." *Warlick v. Peterson*, 58 Mo. 408; *Rogers v. Troost*, 51 Mo. 470; *The State v. Murphy*, 52 Mo. 251; *Gregory v. Chambers*, 78 Mo. 294. Evidently, the appellant misapprehends the purpose of the evidence. *The State v. Claudius*, 1 Mo. App. 551; *Fellows v. Goodman*, 49 Mo. 62; *Buckley v. Knapp*, 48 Mo. 162, 163, 164.

Turner's testimony was competent. The prosecution had not ended, and it was before this action was instituted. Neider's statement could not destroy it. 2 3 Greenl. on Evid. [3 Ed.] sect. 15; *Hays v. Waller*, Mo. 222; *Hicks v. Griffin*, 6 Mo. 37; *The State v. Anderson*, 19 Mo. 241; *Billings v. St. Louis*, 11 Mo. 357; *The State v. Hall*, 85 Mo. 669. The evidence of the respondent, that he "did not appropriate eleven hundred dollars, or any other sum, of Holladay's money," and as to how he "tried to live," etc., was all competent. *Winters v. Railroad*, 39 Mo. 498; *Buckley v. Knapp*, 48 Mo. 162, 163, 164; *Poston v. See*, 54 Mo. 291. The appellant's bond, and all that resulted thereunder, were competent, as tending to show a want of good faith, a want of probable cause, and malice as well. The bond was an admission, in writing, made whilst the prosecution of the indictment was pending, and what followed showed that it had been acted upon. They were all admissions. 1 Greenl. on Evid. [8 Ed.] sects. 27, 201, 207, 208; *Hays v. Waller*, 2 Mo. 222; *Hicks v. Griffin*, 6 Mo. 37; *The State v. Hall*, 85 Mo. 669; *Buckley v. Knapp*, 48 Mo. 162. It was solely a question for the jury, as to whether the appellant consulted with his attorney in good faith. This issue was tendered by the appellant, not by the appellee. *Billings v. St. Louis*, 11 Mo. 357; *The State v. Anderson*, 19 Mo. 241.

THOMPSON, J., delivered the opinion of the court.

This was an action for the malicious prosecution of an indictment for embezzlement and larceny. The petition charges, in substance, that the defendant falsely and maliciously, and without probable cause, by testimony given before the grand jury, charged the plaintiff with embezzling the sum of $1,127.22, intrusted to him by the defendant, as his agent, whereby an indictment was returned against the plaintiff, charging him with such embezzlement and larceny, the plaintiff arrested thereon, and discharged therefrom at the next term of

court, by reason of the refusal of the defendant to prosecute the indictment, and the dismissal of the same.

The petition lays the plaintiff's damages at ten thousand dollars. The answer is a general denial, and, also, a substantive defence, setting up that the indictment was dismissed with the consent of the plaintiff and his counsel. A trial before a jury resulted in a verdict and judgment for one thousand and fifty dollars, from which the defendant prosecutes this appeal. The trial is said to have lasted several days. The record abounds with exceptions and objections. The motion for a new trial contains twenty-one points, and sixteen distinct assignments of error are pressed upon the attention of the court in the appellant's printed argument. Although the bill of exceptions contains ninety solid pages of typewriter print, without extra spaces between the lines, no index of the matter contained therein is furnished, but a long fee bill is annexed to the transcript. The statement of the appellant is very long, but, though its correctness is challenged by the respondent, it does not point out the pages of the record where the particular matters of exception are found. It appears, however, to be, for the most part, a transcript of the record.

I.   A witness for the plaintiff was permitted to testify to the plaintiff's good reputation in the community for honesty. This was error. *Brennan v. Tracy*, 2 Mo. App. 540; *Cornwall v. Richardson*, Ry. & M. 305; *Guy v. Gregory*, 9 Carr. & P. 584, 587; Odgers on Slan. & Lib. 298. The rule in respect of the plaintiff's character, in actions for slander, libel, and malicious prosecution, is the same as that in respect of the defendant's character in criminal prosecutions. The plaintiff's character is presumed to be good until challenged by the defendant; and the courts have, consequently, united upon the rule that the plaintiff can not give evidence of his general character, in these actions, unless such character is put in issue by the pleadings, or has been attacked on the cross-examination of his witnesses, or, by direct evidence

on the part of the defendant.    The cases cited in support of this ruling of the trial court (*Miller v. Brown*, 3 Mo. 127 ; *Gregory v. Chambers*, 78 Mo. 294, 300), were cases where the plaintiff's character or reputation was first put in issue by the defendant.    It is true, that it may be plausibly argued that the rule should work both ways ; that, unless the plaintiff's character is an element to be taken into consideration by the jury, in estimating damages, neither party should be allowed to put it in issue, and that, if it is a proper element in estimating such damages, that either party should be accorded this privilege ; and there are *dicta* in some of our reports to the effect that the plaintiff's general character for honesty is involved in actions of this kind.    *Gregory v. Chambers*, *supra.*    But the rule, as above stated, has long been settled and acted upon, and we are not at liberty to disturb it.

II.    Evidence was admitted, against the defendant's objection, that the plaintiff paid taxes upon one hundred and seventy-five dollars worth of personal property and three hundred dollars worth of real property.    This evidence was obviously offered for the purpose of showing that the plaintiff was a poor man, and creating sympathy in his behalf on the part of the jury.    In the state of our decisions, we are not prepared to say that *competent evidence* of the plaintiff's financial standing would have been inadmissible.    In *Buckley v. Knapp* (48 Mo. 152, 162), which was an action for damages for a libel, the court permitted the plaintiff to introduce evidence touching the wealth of the defendant.    It was held, upon a review of numerous decisions, that this was not error—the court proceeding upon the view that the wealth of the defendant may be taken into consideration by the jury, in cases where exemplary damages may be given, in determining the award of damages which ought to be made ; since an award of damages, which would be a great punishment to a poor man, would be without value as a public example when made

against a wealthy defendant. "In all cases," said Wagner, J., "where vindictive damages are allowed, it is upon the theory that the defendant's conduct has been such that he deserves to be punished, and they are given with a view of measuring out punishment to him, as well as awarding compensation to the plaintiff. When we arrive at this conclusion, it seems to me that it logically follows that the inquiry as to the pecuniary resources of the defendant becomes pertinent and material; for what would be a severe punishment to a very poor man, would be of no consequence to a rich one." *Ibid.* 164. In *Polston v. See* (54 Mo. 291), which was an action for damages for slander, the manner in which the question arose is not stated, though, from the fact that counsel for the appellant (defendant) made the point that evidence of the plaintiff's property was not admissible, it is to be inferred that it was upon the admission of such evidence that the assignment of error was made. The opinion of the court, given by Adams, J., merely says that "the plaintiff was allowed to prove his own condition in life, and, also, that of the defendant, as bearing upon the question of damages, and an instruction was also given on this point in favor of the plaintiff." Further on in the opinion, he says, when disposing of this point: "The plaintiff's condition in life, as well as that of the defendant, are proper subjects of inquiry in slander cases, on the question of damages. Slander, uttered by a man of great influence in society, would certainly be more injurious than if spoken by a party of no consequence." *Ibid.* 294–95. In a later decision the question arose upon the propriety of an instruction which told the jury that, if they found for the plaintiff, in estimating his damages, they might take into consideration all the facts and circumstances detailed by the evidence, and that they might take into consideration the circumstances of the plaintiff and the injury to his feelings, and that they might add thereto, as compensation for his injuries, "smart money." It

was objected to this instruction that there was no evidence in the case tending to show the circumstances of the plaintiff, and that it was hence wrong to instruct the jury on the subject. The court, in an opinion by Vories, J., said : "It is shown by the evidence that the plaintiff was a school director, and that the contract, in which the forgery was charged to have been made, was made by the plaintiff in his official capacity. This does tend, to some extent, to show his circumstances in life, and serve to characterize the whole transaction and show its publicity. The circumstances of the plaintiff, referred to in the instructions, must not be confined to the facts relating to his pecuniary condition, and whether he had a family, and matters of that kind ; but the reference should be to all of the circumstances of the case which give character to the slander and the injury occasioned thereby ; and it was proper that the jury should be instructed to take such facts into consideration, and it was, also, proper to instruct them that they might give punitive damages." *Clements v. Maloney*, 55 Mo. 352, 359. The principle to be extracted from these decisions seems to be, that the wealth and social standing of both the plaintiff and the defendant are elements which may be taken into considertion by the jury in awarding damages, in an action for malicious prosecution, which is analogous to an action for libel or slander, and hence that such matters may be given in evidence.

But we are, nevertheless, at a loss to understand upon what principle entries in the tax books could be admitted in the plaintiff's favor, as proving his financial condition. Entries in such books have been admitted where made upon the person's own return, upon the principle of declarations against interest, where offered as evidence against the person ; or, when offered in favor of the person, for the purpose of proving the fact itself, namely, that he has paid a certain tax, or that a certain tax was assessed against him. But when

offered, as in this case, in the person's own favor, for the purpose of showing his financial standing, these entries stand strictly on the footing of hearsay testimony, or of declarations made by the person in his own favor. It is a notorious fact that not one tithe of personal property held is ever returned for taxation, and, therefore, the evidence can not rest upon a presumption of right acting, and we are at a loss to see on what possible theory it is admissible for the purpose for which it was admitted in this case. We hold that the admission of it was error.

III. There was no error in allowing a witness to testify that, in an interview with the defendant, after the indictment had been found, and at the term at which it was dismissed, the defendant told the witness that he, the defendant, "was going to penitentiary Kennedy, or something to that effect," the witness did not remember exactly what. The evidence was meagre on the question whether the defendant *voluntarily* went before the grand jury and procured the indictment, and this declaration was competent on the question of motive and intent. In actions for libel, slander, and malicious prosecution, subsequent declarations of the defendant are frequently admitted in evidence, as tending to show his previous *animus* against the plaintiff, and to characterize the motive with which the previous declaration was made or act done.

IV. But, for the same reasons, the court erred in refusing to permit a witness for the defendant, who, as assistant prosecuting attorney, had prepared the indictment and laid it before the grand jury, and who was with the defendant both before and after it was prepared, as well as at the term at which it was dismissed, and also at the time of the alleged statement detailed by the witness just referred to, to answer this question, put by the defendant: "Did Holladay exhibit, by any word or act, any ill-will or malice toward Kennedy?" It is true that malice, in a legal sense, is not hatred or ill-

will, as counsel seem to suppose; but, as the court correctly instructed the jury, exists where an unlawful act is wilfully done, without just provocation or excuse. But it was a disputed question in the case, whether the defendant voluntarily put on foot the criminal prosecution against the plaintiff, and the evidence on the point was meagre. Evidence of the defendant's previous good will or ill-will toward the plaintiff was, therefore, admissible, as throwing light on this question.

V. There was no error in permitting the plaintiff to testify that he "did not appropriate eleven hundred dollars, or any other sum, of Holladay's money." The criminal indictment charged that he did this. Although, as justly held in *Brennan v. Tracy* (2 Mo. App. 540), and other Missouri cases, and as the court charged the jury in this case, the issue in such an action as this is, not whether the plaintiff was guilty of the crime charged in the criminal indictment, but whether the defendant had probable cause to believe him so; nevertheless, the fact whether he was guilty or innocent is material, as bearing upon the question of probable cause, and no ruling with which we are acquainted makes testimony as to such fact irrelevant.

VI. But the court clearly erred in allowing the plaintiff, testifying in his own behalf, against the objection of the defendant, to say, "I have been trying to lead an honest life and raise an honest family." The plaintiff could not prove his own good character by his own testimony, and this was clearly a prejudicial appeal to the sympathies of the jury, which ought not to have been allowed. The court ought to have rebuked the witness and instructed the jury to disregard the statement.

VII. The plaintiff, testifying in his own behalf, was asked: "State what your actual damages were, if any, which you have sustained, in feelings, trouble, in damages to your character, in inconvenience, in the

expense of the prosecution, and insult to your feelings, and injury to your business standing." This was objected to on several grounds, among them that damages could not be proved in this way. The court overruled the objection and the defendant excepted. The witness answered : "I think that I have been damaged in the sum of ten thousand dollars." This was error. Value is often a matter of opinion, and witnesses acquainted with the value of an article are allowed to give their opinion as to its value to the jury, though the jury are not bound by such opinion ; but in cases where the amount of damages which a party ought to recover is a matter of opinion, the jury alone, and not the witnesses, must give the opinion. The witnesses must give the facts, and the jury must say upon those facts how much, if anything, the plaintiff has been damaged. *White v. Stoner*, 18 Mo. App. 540, 547 ; *Belch v. Railroad*, 18 Mo. App. 80 ; *Winkler v. Railroad*, 21 Mo. App. 99, 109. We have held in other cases at this term of court that the award of damages may be, under the evidence, so moderate, especially where other circumstances concur, as to lead to the conclusion that such an error wrought no prejudice. *Pierce v. Lutesville, ante*, p. 317. But we can not say so upon this record, and for this error alone we should feel bound to reverse the present judgment.

VIII. Against the objection of the defendant, the court admitted in evidence the record in a proceeding by arbitration, and a mass of testimony relating thereto, which arbitration took place between the plaintiff and the defendant *after* the indictment had been found, and which resulted in an award in favor of the present defendant, in the sum of twenty-five dollars, which award was made the judgment of the circuit court. This award was not competent evidence upon any view. In so far as it could speak on the question, whether facts existed authorizing the defendant to commence the criminal prosecution, upon a *bona fide* opinion, after reasonable inquiry, that the plaintiff was guilty of the

offence charged in the indictment, it was hearsay evidence merely. It was merely the opinion of three arbitrators, who do not even appear to have been sworn, or to have heard testimony under oath. If the plaintiff had been suing on the award, or if the defendant had been suing on the cause of action settled by the award, it would have been relevant. But, under the issues on trial here, it was in the nature of opinion evidence merely, and it was opinion evidence in respect of facts as to which the opinions of witnesses were not admissible. Besides, the evidence conclusively establishes, we think, that the award was erroneous, in giving the plaintiff credit for $767.63, for lumber which the defendant had furnished and charged him on his *individual* account, and which had never been charged on his *agency* account. The introduction of this evidence, of what the defendant had manifestly done and acquiesced in, for the sake of peace, and under the advice of friends, was plainly prejudicial. Especially, in view of the fact that, if the arbitrators had made a correct finding, they would, laying out of view all doubtful and disputed matters, have found that the plaintiff had received from the defendant, in his character of agent, lumber of the value of near eight hundred dollars, which he did not have on hand, and for which he had not rendered any account.

IX. Under the circumstances of this case, we see no error in allowing the plaintiff to put in evidence his own book, showing his account with the defendant as the agent of the latter. The defendant testified that, prior to the commencement of the criminal prosecution, he had called upon the plaintiff for the book; that, after being put off several times, and meeting with various excuses, he had been allowed to inspect it; and that his conclusion that the plaintiff was in debt to him in the sum of over eleven hundred dollars, for which he had failed to render any account, was founded in part, it is to be fairly inferred from his testimony, upon his exploration of this book. This seems to connect it with the *res*

*gestæ*, and to make it competent. We do not under-
stand that there is any contention that it contained
false entries, and, further, we see no prejudice to the
defendant in the disclosures which it contained. We
understand, from the evidence, that it showed a balance
due from the plaintiff to the defendant of $1,598.04,
money which should have been received by the plaintiff
as agent of the defendant, and which was unaccounted
for ; at least, that this is the defendant's deduction from
it. This item of evidence seems to have been more
favorable to him than to the plaintiff, a fact which
seems to explain the plaintiff's reluctance to allow the
defendant to inspect it, as the defendant testifies.

X. We are not prepared to say that the court erred
in refusing to sustain a demurrer to the evidence, at
the close of the plaintiff's case. Upon the question
whether the defendant went voluntarily before the
grand jury, or, when requested by the prosecuting
attorney so to do, supposed that it was his duty to go
and state the facts in the grand jury room, the evidence
is very equivocal. There was no evidence that the
defendant ever did anything towards instituting this
criminal prosecution, either by himself or by his attor-
ney, except to go into the grand jury room, at the
request of the prosecuting attorney, and make a state-
ment to the grand jury of his version of the facts, which
statement, reduced to writing by some one, was given
to the assistant prosecuting attorney, who, on the facts
thereby furnished, drew the indictment at the request of
the grand jury. It does appear, however, that the
defendant had consulted an attorney about the state of
the plaintiff's accounts with him ; that the attorney had
advised him that the defendant was guilty of embezzle-
ment, and had been in consultation with the prosecut-
ing attorney before the latter requested the defendant
to go into the grand jury room. This, taken in connec-
tion with the other surroundings of the case, we think
authorized the court to leave it to the jury to say

whether the defendant had *voluntarily* procured the finding of the indictment. Outside of this, the evidence produced raises strong inferences that the defendant had probable cause for instituting the prosecution, and that he did it in good faith, on the advice of counsel, learned in the law. We think the case calls for the application of the general principle (subject to exceptions) that, where a defence rests upon affirmative evidence, the case must go to the jury, since they may discredit the evidence. See *Gregory v. Chambers*, 78 Mo. 298.

XI. A question of some importance arises upon the assignment of error, that an action for malicious prosecution had not been ended by a trial on the merits, but merely by a dismissal, or *nolle prosequi*. The authorities upon this subject are conflicting. We shall not enter upon the task of reviewing them, and especially we shall not collect them and throw them into the opposing scales for the purpose of being able to say in favor of which view there is a numerical preponderance of evidence. We have held, at the present term, in a case, however, where the point was not contested, that such an action *may* be maintained, where the indictment in the criminal prosecution was quashed on motion for insufficiency in point of law (*McKenzie v. Railroad*, 24 Mo. App. 392) ; and we see no reason why the same principle should not apply where the prosecution terminates by a voluntary dismissal, entered by the state's attorney. The essential thing is, that the prosecution, on which the civil action is predicated, should have come to an end. How it came to an end can make no difference to the rights of the person injured thereby. Whether it ended in a verdict in his favor, in a quashing of the indictment, or in a *nolle prosequi*, he has been disgraced, imprisoned, and put to expense ; and the difference between the injury done him in the three cases is only a difference of degree, affecting the amount of his recovery.

XII. The court should have permitted the expert accountants produced by the defendant to testify, from

the books of the plaintiff, as to the state of the account between the plaintiff and the defendant, at the time when the criminal prosecution was instituted. The court was in error in excluding this evidence, on the ground that it was for the jury to make the calculations. The jury could not, it would seem, upon rulings of our supreme court (*Baker v. Rice*, 52 Mo. 23; *Foster v. McO'Blenis*, 18 Mo. 91, and other cases) take these books to their room on retiring to deliberate upon their verdict. The books contained numerous items, were not skillfully kept, and it is not probable that a common jury, from an inspection of them in open court, without the opportunity of conference and consultation among themselves, could arrive at a just conclusion in regard to the state of the account. On the other hand, it is plain they could be aided by competent experts, and, as these experts would be subject to cross-examination, the value of their deductions could be easily sifted. In proceedings before referees and masters in chancery, it is the frequent practice to call in expert accountants to explain complicated entries in books of account; and, for stronger reasons, such testimony should be permitted in a case of this kind, tried before a jury, where the entries in the book are material to the issues.

XIII. The instructions on which the case was submitted to the jury were very full, and were, on the whole, carefully drawn. There was plainly no error in telling them that, "in determining whether the defendant was actuated by the malice defined by the court, they are at liberty to take into consideration all the facts and circumstances in evidence before them." On the contrary, it would be a misuse by the jury of their powers to decide the question of malice without taking all the facts and circumstances into consideration. Nor was there any error in defining malice as meaning "a wrongful act, done intentionally, without legal justification or excuse." This is the definition of malice commonly given in this state, both in criminal prosecutions

for murder and in civil actions for malicious prosecution.

XIV. We are, however, of opinion that the court erred in refusing the following instruction :

"If the jury shall find, from the evidence in the cause, that the defendant was, by the prosecuting attorney of Butler county, sent before the grand jury, and that he went before it by the direction of said 'prosecuting attorney, and not on his own motion or suggestion ; and, upon being questioned by the grand jury, testified to what he believed to be true in reference to the criminal offence supposed to have been committed by the plaintiff, Kennedy, and thereafter took no further part in the criminal prosecution of Kennedy, then these facts are not such from which the jury can, or have a right to, infer malice on the part of the defendant, Holladay, and if the jury find such are the facts they must find the issues for the defendant."

It was strictly applicable to the plaintiff's evidence ; and if the facts embraced in the hypothesis were true, the defendant was neither guilty of malice nor was he mover of the criminal prosecution.

XV. We are not prepared to say that the court committed error in refusing the defendant's instruction marked C. It is predicated upon the theory that the honest belief of the defendant in a certain state of facts, there recited, constituted probable cause, rendered the inquiry of malice immaterial, and, consequently, exonerated the defendant. It is true that, where there is probable cause, the question of motive is immaterial; but an honest belief in a given state of facts does not, of itself, constitute probable cause. The belief must be based upon reasonable grounds, and must be the belief of a reasonable, careful, and prudent man.

XVI. The affidavits touching the remarks of the plaintiff's counsel, in his argument to the jury, present no question for review. In the first place, we have held that such a ground for a new trial can not be raised by

affidavits filed after the close of the trial, but must be shown by the bill of exceptions. *The State v. Zumbunson*, 13 Mo. App. 592; *Roeder v. Studt*, 12 Mo. App. 566; 21 Cent. Law Jour. 447.

Moreover, the affidavits are here conflicting in essential particulars, and this, on well settled principles, would remit the decision of the question to the trial judge, which decision would not ordinarily be reviewed on appeal. *The State v. Baber*, 11 Mo. App. 586; *The State v. Johnson*, 76 Mo. 121. Finally, the bill of exceptions does not show that any remarks made by the plaintiff's counsel were objected to, or in any way · brought to the attention of the court at the time when they were made. This must be done (*The State v. Degonia*, 69 Mo. 486; *Barbour v. McKee*, 7 Mo. App. 587); and even then error can not be assigned upon such a matter, unless the remarks were plainly prejudicial, and the court refused to check or rebuke the counsel making them.

The judgment will be reversed and the cause re manded. It is so ordered. Judge Rombauer concurs. Judge Lewis is absent.